515 P.2d 52

**Walter L. ANDERSON, d/b/a W. L. Anderson Concrete Contracting Company, Appellant and Cross-Appellee,**

**v.**

**William Howard MUNIZ and Georgann Muniz, husband and wife, Appellees and Cross-Appellants.**

**No. 2 CA–CIV 1377.**

Court of Appeals of Arizona, Division 2.

Oct. 30, 1973.

Rehearing Denied Nov. 29, 1973.

Review Denied Jan. 3, 1974.

---

Chandler, Tullar, Udall & Richmond by James L. Richmond and D. B. Udall, Tucson, for appellant and cross-appellee.

Robertson, Molloy, Fickett & Jones, P. C. by John F. Molloy, Tucson, for appellees and cross-appellants.

## OPINION

HOWARD, Judge.

This is an action for personal injuries sustained by appellee William Muniz during the construction of the Three Sovereigns Restaurant in Tucson. The action was tried before a jury which awarded appellees damages in the amount of $6,798.15.

The appellees filed a motion for judgment n. o. v. and a motion for new trial. The trial court denied the former motion and granted the latter motion for new trial. Appellant contends the trial court erred in granting a new trial.

William H. Muniz was working for the owner of the building under construction as a supervisor of the work. The owner of the building was Buena Vista Development Company, a corporation which, ac-

cording to Mr. Muniz, was "owned" by his brother-in-law. The building was to be a large, deluxe restaurant. The owner was acting as the "contractor" and had contracted for all the work to be performed by various sub-contractors including the appellant-defendant, Anderson Concrete Contracting Company, Inc.

In charge of the work for the owner was a Mike Tashman who held a contractor's license for the owner. When it was completed, Mr. Muniz was going to manage the Three Sovereigns Restaurant. Mr. Muniz testified that he communicated with his brother-in-law, Mr. Billick, who was living in Pennsylvania, almost every day on the telephone. He would inform Mr. Billick of the progress of the construction and was instructed by Mr. Billick to watch for and make sure that the appellant got a good building. Muniz testified that his principal job was to see that the concrete was poured properly and especially to watch the roof construction. Mr. Muniz had previous experience in the construction industry as an ironworker.

On Friday, September 2, 1966, men working for appellant were pouring a floor in the kitchen area over which the roofing work had not as yet been completed. The roof over this area was pre-cast concrete, with various holes left in it for duct work. Because they were of the opinion that covering these holes would protect the concrete that had been poured from sun and rain, appellant's employees covered the holes with insulation board from the various bundles of insulation on the roof which had been left there by the roofing contractor. This insulation board was put over the holes in preparation for the Labor Day Weekend.

On Labor Day, Muniz visited the construction site because he felt that he would have a better opportunity to inspect the work. He found some ladders up against the building, climbed to the main roof of the building and proceeded to the area of the roof over the kitchen. He was accompanied by his brother and his fifteen year-old son. As he was walking on the roof, he stepped on three insulation boards which covered one of the holes. The boards collapsed and Muniz fell through the hole, landing twenty-one and one-half feet below.

The insulation board covering the hole through which he fell was not designed to be used to span any opening in the roof. It is two inches thick and breaks abruptly when approximately seventy pounds of weight is placed on it while spanning a gap similar to the one through which Muniz fell. The specifications for this particular job called for a different type of board similar in appearance which would have easily supported Muniz' weight over the hole.

As a result of the fall, Mr. Muniz suffered a fracture of a vertebra in the lumbar area and aggravation of an existing back problem which had occasioned two previous operations. As a result of the accident two more operations were performed.

After the verdict was read the foreman of the jury requested permission to make a statement to the court, and then stated that the jury unanimously found both parties negligent.

The appellant first questions the propriety of granting a new trial when the jury determined that both parties were negligent. This argument assumes that the foreman's comments after announcement of the verdict had some legal efficacy. Rule 49(a), Ariz.R.Civ.P., 16 A.R.S., provides that the verdict shall be in writing. Rule 49(b), Ariz.R.Civ.P., provides that the clerk after reading the verdict, shall ask the jury, or the jurors agreeing, if it is their verdict. Rule 49(f) allows the parties to poll the jury in order to ascertain from each concurring juror if it is his verdict. Thus, the only oral statements which have a binding legal effect are those elicited under the foregoing rules. The statement by the foreman of the jury in the case *sub judice* was a mere gratuity. It did not indicate that the jurors disagreed

with the verdict. In fact, when asked by the clerk, the jurors indicated it was their verdict. The foreman's statement demonstrated that the jury decided to award the appellees damages even though they thought that William Muniz was guilty of contributory negligence. Under the Constitution of this State they are permitted to do so. Heimke v. Munoz, 106 Ariz. 26, 470 P.2d 107 (1970); Winchester v. Palko, 18 Ariz.App. 534, 504 P.2d 65 (1973). The foreman's statement did no more than inform the court that as far as liability was concerned the jury exercised its prerogative to find against the defendant notwithstanding the fact that it found the plaintiff was also negligent.

But, having found that the plaintiffs were entitled to recover, under Arizona law, it was incumbent upon the jury to award damages to which they were legally entitled as shown by the evidence. The jury awarded only medical expenses. It is true that in some cases such as Meyer v. Ricklick, 99 Ariz. 355, 409 P.2d 280 (1966), where there is a conflict of evidence, what may appear to be an inadequate verdict may really be adequate since the jury may disbelieve some and believe other evidence. However, this is not one of those cases. Appellant presented no medical witnesses to dispute appellees' medical testimony. Appellant's theory on cross-examination of appellees' medical witnesses was that Muniz was suffering from the results of a prior medical problem in his lower back. However, all the doctors testified that there was a causal relationship between the accident and the subsequent two operations and persistent back and leg problems.

When it appears to the trial court the damages awarded are clearly below or beyond the limits justified by the evidence, it does not abuse its discretion in granting a new trial. Reed v. Hyde, 15 Ariz.App. 203, 487 P.2d 424 (1971).

The court granted a new trial only on the issue of damages. This we be-

lieve was error. There was sufficient evidence from which a jury could legitimately conclude that William Muniz was also negligent and that this negligence was a proximate cause of his injuries. The court should never permit a litigant to select for retrial the issues decided against him and to treat those decided in his favor as settled, when the issues are interwoven and cannot be separated without injustice to the opposing party. The practical difficulty of a retrial before a new jury, for example, of the issue of damages while retaining the decision of the first jury upon the issue of liability is apparent. Usually these issues will be inextricably interwoven. Reay v. Beasley, 49 Ariz. 362, 66 P.2d 1043 (1937).

Appellant has raised another issue concerning the amount of medical expenses. Appellees' medical expenses have been paid by the State Compensation Fund and it has a lien pursuant to A.R.S. § 23–1023. The trial court ruled that the doctors could testify as to the amount they ordinarily would have charged for their services which was higher than the actual amount charged to and paid by the State Compensation Fund. While appellant agrees it should pay medical expenses even though they were covered by Workmen's Compensation, it argues that it should not have to pay more than what the doctors charged the Fund. Appellees have cited cases such as City of Tucson v. Holliday, 3 Ariz.App. 10, 411 P. 2d 183 (1966) which stand for the proposition that a plaintiff may recover the reasonable value of nursing care or services rendered gratuitously for his benefit by friends or relatives. They also rely on cases annotated in 68 A.L.R.2d 876 which hold that the value of medical or hospital expenses may be recovered by the plaintiff even if they were rendered gratuitously.[1] Appellees contend that these cases are analogous to the situation at hand and that the difference between what the doctors charged the Fund and the reasonable value of the services constitute a gratuitous ren-

1. See also cases Annot. 7 A.L.R.3d 516 Damages—Collateral Source Rule.

dering of medical services which appellant should have to pay to appellees.

While we agree with the rationale of the cases cited by appellees, we do not consider them apposite. We agree with the reasoning of the court in Pabon v. Cotton State Mutual Insurance Company, 196 F.Supp. 586 (D.C.Puerto Rico 1961) at page 588:

"The evidence shows that the only disbursement incurred by the State Insurance Fund, which the plaintiff is bound to reimburse to said agency, is the amount of $205.00 paid to the Dental Surgeon Dr. Ricardo Pesquera.

Dr. Pesquera testified that the reasonable value of his services was, at least $75.00 higher than the amount of $205.00 paid to him by the Fund according to the schedule of rates contractually agreed upon between him and the Fund.

However, there was no evidence whatsoever tending to establish, that as regards the additional $75.00 which Dr. Pesquera testified he could have reasonably charged for his services, but which he never charged or collected, that it was his intention to charge it off as a gift or gratuity to the plaintiff.

This is not the situation where a person entitled to make a charge for services, or to deduct unearned salaries, fails to make any charge or deduction out of mere direct generosity to the person otherwise liable for said charge or discount.

Here, Dr. Pesquera charged $205 because he was contractually bound to make such charge only and not because of any other consideration directly touching the plaintiff.

Therefore, plaintiff is only entitled to recover, as damages representing medical expenses, the aforesaid amount of $205.-00."

■ If on retrial, it appears that the doctors' charges were based on a schedule of rates contractually agreed upon between them and the Fund, then the appellees can receive no more than those charges.

■ Appellees have filed a cross-appeal claiming the court erred in denying their motion for judgment n. o. v. The motion requested a judgment in their favor on the liability issue and directing a new trial on the issue of damages. Since the new trial as to damages afforded appellees this relief, they were not aggrieved by the denial of the motion for judgment n. o. v., hence no appeal lies. Aegerter v. Duncan, 7 Ariz.App. 239, 437 P.2d 991 (1968). Furthermore, as we have previously indicated, there was adequate evidence to support submitting the issue of Muniz' contributory negligence to the jury. Therefore it is obvious that the trial court did not err in denying the motion for judgment n. o. v. re liability.

The order of the court granting a new trial is modified by eliminating therefrom that portion limiting the issue to be retried to the amount of damages, and as modified, it is affirmed.

HAIRE and EUBANK, JJ., concur.

NOTE: Judges HERBERT F. KRUCKER and JAMES D. HATHAWAY having requested that they be relieved from consideration of this matter, Judges LEVI RAY HAIRE and WILLIAM E. EUBANK were called to sit in their stead and participate in the determination of this decision.