995 P.2d 281

**Karen H. LARSEN, a single woman, Plaintiff–Appellant,**

v.

**Robert C. DECKER, a single man; Robert C. Decker and CATHY Decker, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 99–0414.**

Court of Appeals of Arizona, Division 1, Department E.

Feb. 17, 2000.

As Amended Feb. 22, 2000.

Stanley David Murray, P.C. by Stanley David Murray, Phoenix, Attorneys for Appellant.

David M. Bell, J. Gregory Cahill, Phoenix, Attorneys for Appellees.

## OPINION

TOCI, Judge.

¶1 Karen H. Larsen appeals from the judgment awarding her damages resulting from an automobile accident and from the trial court's denial of her motion for new trial. She contends that the court erred in excluding some of her medical records and bills and a Social Security Administration

("SSA") report finding her permanently disabled after the auto accident. Specifically, she argues that Rule 803(8)(C), Arizona Rules of Evidence ("the Rule"), does not distinguish between factual findings and conclusions for purposes of the admissibility of a public agency report. Although we agree and reject the·contrary dictum in *Davis v. Cessna Aircraft Corp.*, 182 Ariz. 26, 36, 893 P.2d 26, 36 (App.1994), we conclude that the trial court did not err in excluding the SSA report on the grounds of unreliability. We further find no abuse of discretion in the exclusion of the medical records and no error in the ruling on her request for new trial. We therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Larsen fell from her bicycle in November 1993, and suffered a broken hip and elbow. In September 1994, Robert C. Decker's car collided with her car at an intersection, and she again sustained a number of injuries.

¶ 3 Decker admitted liability, and trial was confined to Larsen's damages attributable to the auto accident. Although no doctor testified, deposition testimony of Doctors Bodell, Calkins, Calderone, and McLean was presented to the jury.

¶ 4 Larsen claimed a broken elbow, a left shoulder injury that required surgery, and aggravation of her hip injury. She admitted that no spinal damage resulted from the auto accident, but she claimed very significant and continuing back pain.

¶ 5 Decker disputed a connection between her shoulder complaints and the auto accident because Larsen had fallen on the left arm and hand in the bicycle accident, had reported shoulder pain before the auto accident, and diabetes might have contributed to her shoulder problems. Decker also disputed whether the accident had aggravated the prior hip injury and suggested that the back pain was due to aging and degenerative conditions unrelated to the accident. Although Larsen requested damages ranging from $150,000 to $300,000, the jury awarded $24,040.

## II. DISCUSSION

### A. Standard of Review

¶ 6 We review the trial court's evidentiary rulings for a clear abuse of discretion; we will not reverse unless unfair prejudice resulted, *see Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996), or the court incorrectly applied the law. *See Conant v. Whitney*, 190 Ariz. 290, 292, 947 P.2d 864, 866 (App.1997). We view the excluded evidence most favorably to the proponent. *See id.*

¶ 7 Larsen argues, however, that we should exercise *de novo* review because interpretation of a rule or statute is a question of law, and the trial court misinterpreted the Arizona Rules of Evidence, citing *Perguson v. Tamis*, 188 Ariz. 425, 427, 937 P.2d 347, 349 (App.1996) (civil procedure rule's interpretation is a legal issue reviewed *de novo* ). Decker counters that the court's rulings were not based on interpretations of the evidentiary rules but merely on findings of insufficient trustworthiness for the SSA records and of inadequate foundation for some of the medical records and bills.

¶ 8 Before ruling on the proffered evidence, the trial court had to read and understand the evidentiary rules. The court, however, is entrusted with broad discretion in the application of those rules to specific items of evidence. Here, the court had to determine whether the SSA records were sufficiently trustworthy and whether sufficient foundation had been laid for admission of certain medical records. We review these determinations for an abuse of discretion. *See Gemstar*, 185 Ariz. at 506, 917 P.2d at 235.

### B. Exclusion of the SSA Report

¶ 9 Hearsay evidence is excluded from trial because it cannot be subjected to cross-examination and cannot be probed for possible errors in perception, memory, sincerity, or clarity. *See* Morris K. Udall et al., *Law of Evidence* § 121 (3d ed.1991). The hearsay exception in Rule 803(8)(C) assumes that public agency reports avoid these problems.

¶ 10 The trial judge, however, excluded the SSA report finding Larsen disabled from working because it was the opinion "of somebody who's not even a medical person" and because it was not "trustworthy enough" and the evidence relied on was not subject to cross-examination. Rule 803(8) provides, *"[u]nless the sources of information or other circumstances indicate lack of trustworthiness,* records, reports, [or] statements ... in any form, of public ... agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law" may be admitted as an exception to the hearsay rule. (Emphasis added.)

■ ¶ 11 Larsen argues that the SSA report and findings fall within the Rule's parameters because the report is by a public agency on a matter it had a legal duty to report upon after an investigation made pursuant to legal authority. She analogizes to *State ex rel. Miller v. Tucson Associates Ltd. Partnership,* 165 Ariz. 519, 519–20, 799 P.2d 860, 860–61 (App.1990), a case in which a United States Geological Survey report was admitted although the author did not testify. Division Two of this court affirmed and overturned a prior holding that opinions were not admissible under Rule 803(8)(C), citing *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). *Id.* at 520, 799 P.2d at 861.

■ ¶ 12 Larsen notes, however, that *Davis,* 182 Ariz. at 36, 893 P.2d at 36, adopted a contrary view of the Rule. In *Davis,* we held that a federal statute limited the use of a National Transportation Safety Board report as evidence in a damages action arising from an airplane crash. *Id.* at 34, 893 P.2d at 34. In dictum, we also suggested that Rule 803(8)(C) distinguished between factual findings and conclusions. *Id.* at 36, 893 P.2d at 36. We agree that *Rainey* 's more expansive reading allowing admission of both facts and opinions or conclusions is

the better interpretation. We therefore reject *Davis* ' suggestion that opinions in public agency reports are not admissible.[1]

¶ 13 Nevertheless, the SSA finding that Larsen was permanently disabled from working and entitled to widow's benefits was based on the physical injuries suffered in both accidents as documented by her medical records and on her subjective pain complaints. The trial court's concern here appeared to be that the SSA proceedings were essentially *ex parte,* that the Administrative Law Judge ("ALJ") was not qualified as a medical expert, and that none of Larsen's treating doctors had testified and been cross-examined in those proceedings.[2] The court concluded that the report was not sufficiently reliable under these circumstances.

¶ 14 We have found no Arizona case on point, but we do not find Larsen's citation to *Goodman v. Boeing Co.,* 75 Wash.App. 60, 877 P.2d 703, 714–15 (1994), persuasive. There, a Washington court affirmed admission of a SSA finding that the plaintiff was disabled in her suit against her former employer for handicap discrimination. Washington's evidence rule differs significantly from ours, however, and the trial court had carefully examined the disability report, redacted certain parts, invited further redaction, and noted that the report relied on evidence already admitted at the trial. Other courts have excluded SSA findings. *See Jones v. Miller,* 964 S.W.2d 159, 162 (App. Tex.1998) (SSA notice granting plaintiff disability benefits was properly excluded as unsworn incompetent hearsay in her medical malpractice suit); *Keller v. Regan,* 212 A.D.2d 856, 622 N.Y.S.2d 612, 614 (1995) (SSA permanent disability findings excludable in administrative proceeding for disability retirement benefits).

¶ 15 We have also looked at federal court interpretations because our Rule is very similar to Federal Rule 803(8). *See Tucson Assocs.,* 165 Ariz. at 520, 799 P.2d at 861 (we may consider federal cases when the federal

---

1. *Rainey* did not decide whether Rule 803(8)(C), Federal Rules of Evidence, distinguished between fact and opinions on one hand and legal conclusions on the other. *See* 488 U.S. at 170 n. 13, 109 S.Ct. 439.

2. Larsen argues that the report should be admissible without cross-examination of the report's author. The objection, however, was that the medical experts relied upon by the ALJ had not been cross-examined.

rule is similar). For example, some courts have held that a lack of opportunity for cross-examination in conjunction with a public agency report does not necessarily show untrustworthiness. *See In re Japanese Elec. Prods.*, 723 F.2d 238, 268 (3d Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (reports from evidentiary hearings where no cross-examination occurred may be reliable if prepared under a legally imposed duty and standards). Others have held that lack of cross-examination, though not *per se* reason to exclude a report, is an element of trustworthiness to consider. *See Wilson v. Attaway*, 757 F.2d 1227, 1245 (11th Cir.1985).

¶ 16 At least one court has rejected the argument that an author's or investigator's lack of expertise affects admissibility. *See Clark v. Clabaugh*, 20 F.3d 1290, 1294–95 (3d Cir.1994) (police report on racial violence is presumed admissible; unlike Federal Rule 702, nothing in Federal Rule 803 requires the writer be an expert). Another has upheld exclusion of an employment commission report denying a worker unemployment benefits for having voluntarily left her job because of the report's "prejudicial effect" and because the parties to the report were available to testify in the later constructive discharge suit. *See Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1357–58 (4th Cir.1995).

¶ 17 In this instance, we cannot say that the trial court committed legal error and thus abused its discretion in excluding the SSA report. Although we do not agree that the ALJ's mere lack of medical expertise would justify exclusion, Larsen apparently was the sole source of the information provided to the SSA,[3] and no medical expert appeared or was cross-examined as to her condition or attempted to allocate the cause of her disability between the two accidents. Thus, the trial court could reasonably conclude that sufficient doubts about the report's reliability existed when it was offered here to determine what share, if any, of Larsen's injuries had been caused by Decker.

## C. Medical Records and Bills

¶ 18 Larsen next contends that the trial court erred in excluding some of her medical records under Arizona Rule 803(6) and that all of them were admissible business records. The Rule provides that a "report, record, or data compilation, ... of ... conditions, opinions, or diagnoses" is admissible under circumstances not contested here. The Rule disallows such evidence on several grounds, including "to the extent that portions thereof lack an appropriate foundation." Decker argues that the contents of some of the records were properly excluded because no foundation showed that the injuries recorded and corresponding bills for treatment resulted from the auto accident.

¶ 19 Whether business records are sufficiently reliable to satisfy this hearsay exception is for the trial court's sound discretion. *See State v. Petzoldt*, 172 Ariz. 272, 275, 836 P.2d 982, 985 (App.1991). To be relevant, however, the medical records must be linked to the issues in this case. If the records and bills themselves do not establish the necessary connection, other evidence may be needed. *See* John William Strong, *McCormick on Evidence* § 293, at 280–81 (4th ed.1992) (an opinion in a hospital record is uncross-examined and without the expert's explanation and cross-examination at trial, may be excluded if, for example, causation is at issue).

¶ 20 The trial court excluded Exhibit 7, the records and bills of Dr. Chloupek, a medical doctor, and of Dr. Immerman, a chiropractor, both of whom treated Larsen shortly after the auto accident. The records included a patient's medical history form, history of present complaint form, pain chart, report on x-rays, diagnosis, objective findings, and bills for services.[4] The court sustained Decker's objection because Immerman re-took x-rays that had been taken the prior week during Larsen's hospital stay and no testimony showed that either they or the chiropractic treatments were necessary be-

---

**3.** In fact, the SSA decision was revisited because information came to light that Larsen had earned wages in 1995, although her application had denied any employment after 1994.

**4.** Records of Dr. Bodell were included in the packet but these were later admitted with Dr. Bodell's own records.

cause of the auto accident. We find no error. *See, e.g., Patterson v. Horton,* 84 Wash.App. 531, 929 P.2d 1125, 1130 (1997) (negligence plaintiff cannot rely only on medical records and bills to show medical expenses were necessary and reasonable; other evidence must establish the latter).

¶ 21 The trial court next admitted the report but not the bills of Dr. Calderone, a neurosurgeon whom Larsen had consulted for low back pain. He noted findings from a physical exam and a conclusion that "lumbar spine films ... show some mild degenerative disease." He recommended another MRI and from it reported some "disc herniation" and "mild compression on the thecal sac and the S1 nerve root." In his deposition, Calderone stated that neither the physical examination nor x-rays revealed that Larsen's back complaints were caused by the auto accident. The MRI showed degenerative disc conditions and, although he did not know the source of her back pain, he could not rule out the auto accident. The court agreed that no foundation established that Calderone's bills were caused by and were reasonable and necessary results of the auto accident.

¶ 22 Exhibit 12 contained the records of Dr. Rogers, a chiropractic orthopedist, who Larsen testified had treated her for low back, hip, leg, neck, shoulder, and wrist pain. The packet included insurance claim forms and a diagnosis based on a 1995 MRI that found that Larsen's condition was directly related to the two accidents. Her counsel conceded, however, that Rogers had treated Larsen for injuries from both accidents and had not divided the bills. The court sustained Decker's objection because Rogers could have testified about the division but was not asked to do so.

¶ 23 The court also excluded Exhibits 14 and 15, which consisted only of insurance claim forms from Dr. Topper and Dr. Scott, both of whom treated Larsen in 1997. Topper apparently administered epidural injections and Scott chiropractic treatments. The court sustained Decker's foundational objection.

¶ 24 We do not find an abuse of the trial court's discretion in these rulings. Larsen had to establish a connection between the auto accident and the need for treatment from these doctors for injuries caused by the auto accident. Because she failed to do so, the court excluded the evidence.

■ ¶ 25 Larsen asserts, however, that we no longer require that medical opinions satisfy the "reasonable degree of medical certainty" standard and thus that Calderone's opinion of a *possible* link between the accident and Larsen's back pain was enough to admit his bills. Whether Calderone's equivocal testimony on causation was sufficient to permit introduction of his bills and the records of other doctors who treated Larsen for a multiplicity of complaints is best left for the trial court's discretion. We find nothing to the contrary in *Butler v. Wong,* 117 Ariz. 395, 573 P.2d 86 (App.1977). There, Division Two of this court held that an expert's inconclusive testimony linking an auto accident to deafness was not alone enough to be considered by the jury but that the testimony could be considered when it also eliminated a possible cause of the injury. *See id.* at 398–99, 573 P.2d at 89–90.

¶ 26 No testimony aside from Larsen's positively attributed her back complaints to the auto accident, and Calderone's equivocal testimony did not eliminate the other explanation—aging—as a cause. We find no abuse of discretion under these circumstances. Larsen's medical records were not automatically admissible without some testimony to establish that treatment by certain doctors for injuries sustained in the auto accident was necessary.

**D. Motion for New Trial**

■ ¶ 27 Third, Larsen argues that the trial court erred in denying her motion for new trial for insufficiency of the evidence. Trial courts have discretion to grant such a motion only when the verdict is against the weight of the evidence. *See Styles v. Ceranski,* 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App.1996). We will not reverse a denial of such a motion unless the record and circumstances show it was a manifest abuse of discretion. *See id.* Further, we give great deference to the jury's factual findings. *See*

*City of Phoenix v. Mangum,* 185 Ariz. 31, 34, 912 P.2d 35, 38 (App.1996).

¶ 28 Larsen is entitled to recover in tort "those damages which are the direct and proximate consequence of the defendant's wrongful acts." *Valley Nat'l Bank v. Brown,* 110 Ariz. 260, 264, 517 P.2d 1256, 1260 (1974). Further, a damages award is within the jury's province and "will not be disturbed on appeal except where the verdict is so exorbitant as to show passion, prejudice, mistake or complete disregard of the evidence." *Id.* If, however, the award clearly is unsupported by the evidence admitted, a trial court may grant a new trial. *See Anderson v. Muniz,* 21 Ariz.App. 25, 28, 515 P.2d 52, 55 (1973).

¶ 29 Unlike *Anderson,* in this case the evidence did not uniformly and clearly establish a causal connection between all of the medical bills offered and Decker's conduct. As discussed above, much of the medical evidence was equivocal, and thus the jury had to determine how much damage to allocate to the auto accident. Even an apparently inadequate verdict may be adequate when the jury accepts some and rejects other evidence. *See id.* We find no error.

### III. CONCLUSION

¶ 30 We affirm the judgment and the trial court's denial of Larsen's motion for new trial.

CONCURRING: RUDOLPH J. GERBER, Judge, and THOMAS C. KLEINSCHMIDT, Judge.