IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| LYDIA LOPEZ, a single woman, | ) | 2 CA-CV 2005-0057 |
| | ) | DEPARTMENT B |
| Plaintiff/Appellee, | ) | |
| | ) | **O P I N I O N** |
| v. | ) | |
| | ) | |
| SAFEWAY STORES, INC., a Delaware corporation, | ) | |
| | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20036972

Honorable Jane L. Eikleberry, Judge

AFFIRMED

Hollingsworth Law Firm
  By Louis Hollingsworth and Richard Arrotta                                    Tucson

    and

Thomas A. Zlaket, P.L.L.C.
  By Thomas A. Zlaket                                                                        Tucson
                                                              Attorneys for Plaintiff/Appellee

Douglas & Cox, L.L.P.
  By William H. Douglas                                                              Scottsdale
                                                          Attorneys for Defendant/Appellant

P E L A N D E R, Chief Judge.

¶1　　　　In this personal injury action, defendant/appellant Safeway Stores, Inc. appeals from a judgment entered on a jury verdict in favor of plaintiff/appellee Lydia Lopez in the net amount of $360,000 and from the trial court's subsequent denial of Safeway's motion for a new trial. Safeway argues the trial court erroneously denied Safeway's motion in limine and, as a result, erred in admitting a summary of Lopez's medical expenses, which included amounts not actually owed or paid by her or anyone else. Finding no reversible error, we affirm.

**BACKGROUND**

¶2　　　　Although no trial transcripts have been furnished to this court, it appears undisputed that Lopez slipped and fell while entering a Safeway store and sustained various injuries. She then filed this negligence action against Safeway. Before trial, Safeway moved in limine to prohibit Lopez from presenting evidence "reflecting charges for medical care, healthcare or psychological care, which charges are above or beyond what was actually accepted by the healthcare provider in satisfaction of billings." Based on information provided by Lopez, Safeway pointed out that, although Lopez's medical bills totaled approximately $59,700, more than $42,000 of that total was "completely written off as adjustments" and the remaining balance of $16,837 was fully satisfied through contractually agreed-upon payments. In its motion, Safeway argued Lopez should only be able to claim

2

and present evidence on the $16,837, the amount "actually accepted in full satisfaction of the services rendered."

¶3         After considering the parties' memoranda and hearing oral argument, the trial court denied Safeway's motion in limine. Thereafter, Lopez's medical expense summary, reflecting total medical bills of $59,699.57, was admitted into evidence at trial. The jury found in favor of Lopez, awarded damages of $400,000, but found her ten percent at fault and Safeway ninety percent at fault. This appeal followed the trial court's entry of judgment on the verdict and subsequent denial of Safeway's motion for a new trial.

## DISCUSSION

## I

¶4         Safeway argues "[t]he trial court's pretrial ruling on [Safeway's] Motion in Limine and the subsequent submission of full medical bills constitute reversible error requiring a retrial." Relying primarily on *Anderson v. Muniz*, 21 Ariz. App. 25, 515 P.2d 52 (1973), Safeway maintains a "plaintiff's recovery for medical expense claims should be limited to contractually agreed rates accepted in full satisfaction for medical care, not the face amount of billings." Therefore, Safeway asserts, the trial court erred in admitting "evidence at trial of the higher billing amounts which were never paid, and were fully satisfied through contractually agreed upon reduction in charges."

¶5         Before turning to Safeway's argument, we first address two preliminary issues Lopez raises. First, as she points out, the parties stipulated in their joint pretrial statement

3

"that the medical bills incurred by the Plaintiff, as itemized on a Summary Sheet of Medical Expenses, will be deemed as reasonable and customary medical expenses to the extent of the Court's ruling on the Defendant's Motion in Limine . . . , as to the amount of medical bills that will be admissible." Lopez suggests, without response by Safeway in its reply brief, that "the foregoing stipulation seems to have mooted the issue now raised on appeal." We disagree.

¶6 The apparent purpose of the stipulation was merely to ease the burden, or expedite the process, of introducing Lopez's medical expenses into evidence at trial once the trial court ruled on the legal issue presented in Safeway's motion in limine.[1] The pretrial statement does not manifest any intent that the court's ruling on that motion would be binding or otherwise unchallengeable on appeal. Nor did Lopez so argue at the hearing on Safeway's motion in limine or, more importantly, in response to Safeway's subsequent motion for new trial. And the trial court did not cite or rely on the parties' pretrial statement in denying Safeway's motion for new trial. Therefore, we find Safeway's substantive issue on appeal neither moot nor waived. *See Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195

---

[1]In its motion in limine, Safeway stated "the parties could stipulate to the damages once the court has entered its In Limine Ruling regarding the 'phantom' medical expenses." Similarly, at oral argument on that motion, held after the parties filed their joint pretrial statement, Safeway's counsel explained: "The game plan I have agreed to, stipulated to, is that we are going to have you [the trial judge] decide the issue, and then either the jury is going to get this set of medical expenses or this set." These statements place in context the stipulation made in the joint pretrial statement and do not reflect any intent to abandon the legal issue raised in the motion in limine once the trial court had ruled on it.

4

Ariz. 148, ¶ 28, 985 P.2d 633, 640 (App. 1999) (by failing to raise waiver as a defense in the trial court, defendant "waived its waiver argument").

¶7            Second, Lopez argues Safeway's failure to provide the trial transcript makes it "impossible to analyze or decide any issues raised on this appeal."  Again, we disagree. Although Lopez questions how we can determine "whether Safeway's objections [to her medical expense claim] were properly made and preserved," the record includes Safeway's motion in limine, the transcript of the argument on that motion, and the trial court's ruling. Based on that ruling, the court later admitted Lopez's medical expense summary into evidence at trial.  Safeway's pretrial motion preserved its objection to the amount of medical expense Lopez could claim and recover. *See State v. Burton*, 144 Ariz. 248, 250, 697 P.2d 331, 333 (1985) ("where a motion in limine is made and ruled upon, the objection raised in that motion is preserved for appeal, despite the absence of a specific objection at trial"); *see also* State Bar Committee comment, Ariz. R. Civ. P. 7.2, 16 A.R.S., Pt. 1.

¶8            In addition, although we review a trial court's evidentiary rulings for abuse of discretion, *Cervantes v. Rijlaarsdam*, 190 Ariz. 396, 398, 949 P.2d 56, 58 (App. 1997), Safeway's pretrial motion raised a purely legal issue that is subject to our de novo review and that is not dependent on evidence adduced at trial. *See Dean v. Am. Family Mut. Ins. Co.*, 535 N.W.2d 342, 343 (Minn. 1995) (when facts are undisputed, issue of whether collateral source rule applies is reviewed de novo); *Smith v. Shaw*, 159 S.W.3d 830, 832 (Mo. 2005) (same); *Weatherly v. Flournoy*, 929 P.2d 296, 298 (Okla. Civ. App. 1996)

5

(same). As Lopez acknowledges, the available record is sufficient to "decide the correctness of the trial court's ruling on [the] motion in limine."[2]  Accordingly, we do not view "the full evidence presented at trial" as indispensable to review of that ruling, as Lopez claims. Finally, if Lopez deemed the trial transcripts relevant or necessary to resolving the central issue on appeal, she could have designated them for preparation and production to this court.  Ariz. R. Civ. App. P. 11(b)(2), 17B A.R.S.; *Orlando v. Northcutt*, 103 Ariz. 298, 301, 441 P.2d 58, 61 (1968).

## II

¶9        We now turn to Safeway's argument that the trial court erroneously permitted Lopez to claim and recover for medical expenses that were never paid.  As noted earlier, Safeway relies primarily on *Anderson*, contending this court's 1973 decision in that case is "directly on point," "dispositive of the question presented" here, and clearly establishes

---

[2]As Lopez correctly points out, "[r]eversal requires a showing that the alleged error was prejudicial to Safeway's substantial rights."  *See* Ariz. R. Evid. 103(a), 17A A.R.S. ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."); *see also* Ariz. Const. art. VI, § 27; Ariz. R. Civ. P. 61, 16 A.R.S., Pt. 2; *Carter-Glogau Labs., Inc. v. Constr., Prod. & Maint. Laborers' Local 383*, 153 Ariz. 351, 358, 736 P.2d 1163, 1170 (App. 1986); *but see Hirsh v. Manley*, 81 Ariz. 94, 101, 300 P.2d 588, 593 (1956) (new trial ordered when court could not determine to what extent jury had been influenced by inadmissible evidence and could not segregate excess damages awarded to plaintiff); *Valley Transp. Sys. v. Reinartz*, 67 Ariz. 380, 383, 197 P.2d 269, 271 (1948) ("prejudice [is] presumed to exist where improper evidence is admitted upon which the jury might act").  Nonetheless, if Lopez was erroneously permitted to claim and recover medical expenses in an amount approximately 3.5 times greater than what the law allows, we are not persuaded that the trial transcript would be necessary or even helpful in evaluating the question of prejudice here.

6

"that the proper measure of damages for the value of medical services rendered is the contractually agreed upon rate." We find *Anderson* distinguishable but, to the extent it supports the broad proposition Safeway advocates, we overrule that portion of it.

¶10		In *Anderson*, the plaintiff was injured on his job, received workers' compensation benefits, but also filed a third-party personal injury action. In that action, "[t]he trial court ruled that the [plaintiff's] doctors could testify as to the amount they ordinarily would have charged for their services which was higher than the actual amount charged to and paid by the State Compensation Fund." 21 Ariz. App. at 28, 515 P.2d at 55. Adopting the reasoning in *Pabon v. Cotton State Mutual Insurance Co.*, 196 F. Supp. 586 (D.P.R. 1961),[3] this court disagreed with the trial court's ruling and stated: "If on retrial, it appears that the doctors' charges were based on a schedule of rates contractually agreed upon between them and the Fund, then the [plaintiffs] can receive no more than those charges." *Anderson*, 21 Ariz. App. at 29, 515 P.2d at 56.

---

[3]In *Pabon*, as in *Anderson*, the plaintiff sustained an on-the-job injury for which he apparently received workers' compensation benefits. Similarly, the plaintiff's physician in *Pabon* testified at trial, "he could have reasonably charged [more] for his services" than allowed by "the schedule of rates contractually agreed upon between him and the Fund," but "he never charged or collected" that greater amount. 196 F. Supp. at 588. As Lopez points out, *Anderson* also arose from a "workers' compensation setting," and "the entire workers' compensation scheme was (and still is) created and controlled entirely by statute." Thus, neither *Anderson* nor *Pabon* involved the type of situation presented here, where a patient benefits from contractually reduced rates for payment of medical expenses by collateral sources procured by or available to the patient.

7

**¶11**  Although at first blush *Anderson* would seem to apply to this case, on closer analysis it is distinguishable and, therefore, not controlling. There, the State Compensation Fund paid the plaintiff's healthcare providers the "actual amount charged" by each of them. *Id*. at 28, 515 P.2d at 55. Thus, as Lopez points out, "the [*Anderson*] decision stands for the proposition that a party cannot recover for medical expenses in excess of the amounts actually charged (*i.e.*, billed) by healthcare providers," because "the amount billed in that case was identical to the amount paid by the compensation carrier."

**¶12**  Here, in contrast, the billing charges of Lopez's healthcare providers totaled almost $59,700, even though the providers accepted only $16,837 in full satisfaction of those charges based on reduced rates to which the providers had contractually agreed with Lopez's medical insurance carriers. At oral argument in this court, Safeway contended the medical bills reflecting the higher amount had "nothing to do with anything" because they were largely illusory or "phantom." But, as noted earlier, Safeway stipulated that all of Lopez's medical bills would "be deemed as reasonable and customary medical expenses"

for trial purposes.[4] In short, we do not find *Anderson* dispositive; but that does not end our inquiry.

¶13    At the heart of this appeal is whether the collateral source rule applies to Lopez's claim for medical expenses that apparently were charged to her but which neither she nor her medical insurance carriers had to pay.[5] "[T]he collateral source rule," as our supreme court has stated, requires that "'[p]ayments made to or benefits conferred on the

_____

[4]Because of that stipulation, the question whether the $16,837 actually paid was, in fact, the reasonable value of the medical services rendered was not preserved for appeal. And, aside from that stipulation, the limited record before us does not shed any additional light on other, potentially relevant issues. For example, from this record we cannot tell whether Lopez had private medical insurance that covered most of her medical expense. Nor can we tell whether she paid, in the way of premiums or otherwise, for the benefit of health insurance coverage under which her providers apparently were bound to accept adjusted, reduced rates in full payment and satisfaction of their services.

[5]*See generally* A.R.S. §§ 20-1072, 33-931, 33-934; *Blankenbaker v. Jonovich*, 205 Ariz. 383, ¶¶ 1, 19, 71 P.3d 910, 911, 915 (2003) (holding that § 33-934 "allows an action to enforce a health care provider lien only against those liable to an injured person, not against the injured person," but also stating "[t]he provider can always proceed, even in the absence of a lien, against the patient for the value of the services rendered"); *cf. Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, ¶¶ 27, 38, 59 P.3d 281, 289, 291 (2002) (under A.R.S. § 20-1072, HMO "enrollee is immunized from actions by the [health care] provider for recovery of charges for services provided and covered by the enrollee's agreement with the HMO," including "direct action[s] for the difference between the provider's usual fees or charges and the lesser amount payable pursuant to the contract between the provider and the HMO"; but "expenses paid by the HMO coverage [patient/claimant] bought and paid for should be treated [no] differently than expenses paid by a hospital or medical expense policy [she] might have purchased or any other collateral source [she] might have acquired by her own efforts"); *Nahom v. Blue Cross & Blue Shield of Ariz.*, 180 Ariz. 548, 550, 553, 885 P.2d 1113, 1115, 1118 (App. 1994) (patient was third-party beneficiary of contract between hospital and patient's medical insurer, and contract limited hospital's payment to a fixed amount and prevented hospital "from looking to a subscriber [patient] for amounts in excess" of that limit).

injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.'" *Taylor v. S. Pac. Transp. Co.*, 130 Ariz. 516, 519, 637 P.2d 726, 729 (1981), *quoting* Restatement (Second) of Torts § 920A(2) (1979); *see also Hall v. Olague*, 119 Ariz. 73, 73, 579 P.2d 577, 577 (App. 1978) ("The so-called 'collateral source rule' states that total or partial compensation for an injury which the injured party receives from a collateral source wholly independent of the wrongdoer does not operate to reduce the damages recoverable from the wrongdoer."). "The collateral source rule is well established in Arizona tort law." *Michael v. Cole*, 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979); *see also S. Dev. Co. v. Pima Capital Mgmt. Co.*, 201 Ariz. 10, ¶ 33, 31 P.3d 123, 134 (App. 2001); *Hall*, 119 Ariz. at 74, 579 P.2d at 578.

¶14     In many respects, the rule "'is punitive'" because it "allows a plaintiff to fully recover from a defendant for an injury even when the plaintiff has recovered from a source other than the defendant for the same injury." *Norwest Bank (Minnesota), N.A. v. Symington*, 197 Ariz. 181, ¶ 36, 3 P.3d 1101, 1109 (App. 2000), *quoting Grover v. Ratliff*, 120 Ariz. 368, 370, 586 P.2d 213, 215 (App. 1978), *quoting Patent Scaffolding Co. v. William Simpson Constr. Co.*, 64 Cal. Rptr. 187, 191 (Cal. App. 1967). As the court in *Taylor* explained: "The rationale for this rule is that simply because the injured party might have provided by contract for reimbursement of medical expenses, it should not be used to

lessen the tortfeasor's liability.  There should be no windfall for a tortfeasor because he injured an insured instead of a non-insured." 130 Ariz. at 519-20, 637 P.2d at 729-30.

¶15          "The collateral source rule is most often applied in cases where an injured party recovers from a tortfeasor amounts for which plaintiff has already been compensated by his insurer." *Id*. at 519, 637 P.2d at 729; *see also Norwest Bank*, 197 Ariz. 181, ¶ 36, 3 P.3d at 1109.  But the rule also applies when, due to a healthcare provider's gratuitous treatment, a plaintiff neither incurs nor is responsible for payment of the reasonable value of medical services, but nonetheless can claim and recover compensation for that value from the tortfeasor.  *See* Restatement (Second) of Torts § 920A cmt. c(3); 2 Dan B. Dobbs, *Law of Remedies*, § 8.6(3), at 493-94 (2d ed. 1993) (Under the collateral source rule, "gratuitous benefits conferred by others . . . do not reduce the defendant's tort liability, even though the payments operate to reduce the plaintiff's loss. . . .  The plaintiff has been allowed to recover fully against the defendant even though the injury has been partly compensated for by gratuitous donations by third persons, as where . . . he receives free medical treatment.").

¶16          Not surprisingly, the parties disagree on whether the collateral source rule applies to the issue presented here, and they point to different sections of the Restatement (Second) of Torts to support their positions.[6]  Relying on Restatement § 911, comment h,

---

[6]Pointing to footnote one in the *Anderson* decision, which cited "cases[,] Annot. 7 A.L.R. 3d 516 Damages-Collateral Source Rule," 21 Ariz. App. at 28 n.1, 515 P.2d at 55 n.1, Safeway also contends this court was "fully aware of collateral source rule issues" when it ruled as it did in that case.  As noted above, however, we find *Anderson* distinguishable and, despite the cryptic reference in footnote one of that decision, the court there did not

11

Safeway argues "limiting damages to contractually agreed upon rates is not contrary to the 'collateral source rule.'" Section 911 is entitled "Value," a part of the chapter that deals generally with "Damages," and provides in part: "As used in this Chapter, value means exchange value or the value to the owner if this is greater than the exchange value." Restatement § 911(1). Based on this language, Safeway contends § 911 "is the defining section for the term 'value' throughout the chapter, including those instances where the term value appears in Sections 920A and 924," on which Lopez relies.

¶17    In support, Safeway primarily focuses on comment h to § 911, which is entitled "Value of services rendered" and states in part:

> When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. *If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid*, except when the low rate was intended as a gift to him. A person can recover even for an exorbitant amount that he was reasonable in paying in order to avert further harm. (See § 919). (Emphasis added.)

Pointing to the italicized language, Safeway maintains that comment is dispositive here and limits Lopez's medical-expense claim to $16,837, the amount her insurers actually paid. *See also* 25 CJS *Damages* § 153, at 542 (2002) ("Where the amount paid for medical services is in accordance with a contractual schedule of rates, the recovery is limited to that amount although the reasonable value of the services in the absence of the contract is higher.").

---

analyze how the argument Safeway makes here might implicate the collateral source rule.

¶18 In contrast, Lopez argues § 911 and its comment h are inapplicable because they only "pertain[] to suits resulting from fraud or duress or involving mitigation of damages." That argument has some force because the first sentence of comment h states: "The measure of recovery of a person who sues for the value of his services tortiously obtained by the defendant's fraud or duress, or for the value of services rendered in an attempt to mitigate damages, is the reasonable exchange value of the services at the time and place." Arguably the balance of comment h, including the portion on which Safeway relies, refers to that limited context.[7] *See Bynum v. Magno*, 101 P.3d 1149, 1158-60 (Haw. 2004); *Robinson v. Bates*, 828 N.E.2d 657, 664-65 (Ohio App. 2005).

¶19 Lopez contends the Restatement provisions that actually apply and support the trial court's ruling are §§ 920A and 924. Restatement § 920A(2), adopted by our supreme court in *Taylor*, 130 Ariz. at 519, 637 P.2d at 729, states: "Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Comment b to that section, entitled "[b]enefits from collateral sources," states:

> Payments made or benefits conferred by other sources are known as collateral-source benefits. They do not have the effect of reducing the recovery against the defendant. The

---

[7]As Safeway points out, a citation to Restatement § 919 appears at the end of comment h. That section, however, relates to mitigation of damages, a scenario specifically mentioned in the first sentence of comment h and not at issue here.

injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him. One way of stating this conclusion is to say that it is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives.

¶20 Similarly, Restatement § 924, which is entitled "Harm to the Person" and found under the topic heading of "Compensatory Damages for Specific Types of Harm," provides that a tort victim may recover damages for "reasonable medical and other expenses."[8] Much like the collateral source rule, comment f to § 924 states in part:

> The injured person is entitled to damages for all expenses and for the value of services reasonably made necessary by the harm. . . . The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person, as when a physician donates his services. (See § 920A).

---

[8]Consistent with that provision, the trial court instructed the jurors that if they found Safeway liable, they should "decide the full amount of money that will reasonably and fairly compensate" Lopez for her damages, including "reasonable expenses of necessary medical care, treatment, and services rendered."

14

*See also* Am. Jur. 2d *Damages* § 396, at 358 (2003) (generally, "a plaintiff who has been injured by the tortious conduct of the defendant is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury," and "recovery is not necessarily limited to expenditures actually made or obligations incurred for medical care").

¶21         In our view, although these various Restatement provisions overlap and arguably conflict, Restatement §§ 920A and 924 are more specific and directly applicable to the issue presented here. *Cf. City of Phoenix v. Superior Court*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) ("special or specific statutory provisions will usually control over those that are general"). In fact, several courts have recognized that those Restatement sections, rather than § 911, are applicable to cases such as this. *See, e.g., Bynum*, 101 P.3d at 1159-60; *Robinson*, 828 N.E.2d at 664-65; *see also Amlotte v. United States*, 292 F. Supp. 2d 922, 927-28 (E.D. Mich. 2003); *Fye v. Kennedy*, 991 S.W.2d 754, 763 (Tenn. App. 1998); *Koffman v. Leichtfuss*, 630 N.W.2d 201, 209-10 (Wis. 2001). But, to the extent § 911 and its comment h support Safeway's position, we decline to follow them. *See Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, ¶ 26, 972 P.2d 658, 665 (App. 1998) (although Arizona courts generally follow Restatement if no controlling statute or case on the subject exists, "we will not do so blindly," but rather, "must consider whether the Restatement position, as applied to a particular claim, is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged elsewhere").

15

**¶22** The parties also rely on several out-of-state cases to support their respective positions. Safeway relies primarily on *Moorhead v. Crozer Chester Medical Center*, 765 A.2d 786 (Pa. 2001), and *Hanif v. Housing Authority*, 246 Cal. Rptr. 192 (Cal. App. 1988). In *Moorhead*, "[t]he fair and reasonable value of the medical services rendered" to the patient was approximately $108,668, but the Medicare allowance for those services was only $12,167. 765 A.2d at 788. Plaintiffs sought recovery of the full $108,668, even though, as the Pennsylvania Supreme Court noted, she "never was and never will be legally obligated to pay more than $12,167.40 for the medical services." *Id.* That court concluded plaintiff was only "entitled to the amount actually paid," and therefore could not collect the additional amount of approximately $96,500. *Id*. at 789. In so ruling, the court relied in part on Restatement § 911, comment h, and stated:

> [W]here, as here, the exact amount of expenses has been established by contract and those expenses have been satisfied, there is no longer any issue as to the amount of expenses for which the plaintiff will be liable. In the latter case, the injured party should be limited to recovering the amount paid for the medical services . . . .
>
>      . . . .
>
> Awarding [plaintiff] the additional amount of $96,500.91 would provide her with a windfall and would violate fundamental tenets of just compensation. It is a basic principle of tort law that "damages are to be compensatory to the full extent of the injury sustained, but the award should be limited to compensation and compensation alone." [Plaintiff] never has, and never will, incur the $96,500.91 sum from [defendant] as an expense. We discern no principled basis upon which to justify awarding that additional amount.

. . . .

> Clearly, [plaintiff] is entitled to recover $12,167.40, the amount which was paid on her behalf by Medicare and Blue Cross, the collateral sources. But the essential point to recognize is that [defendant] is not seeking to diminish [plaintiff's] recovery by this amount. Rather, the issue is whether [plaintiff] is entitled to collect the additional amount of $96,500.91 as an expense. [Plaintiff] did not pay $96,500.91, nor did Medicare or Blue Cross pay that amount on her behalf. The collateral source rule does not apply to the illusory "charge" of $96,500.91 since that amount was not paid by any collateral source.

*Id*. at 789-91 (citations omitted).

¶23      Applying similar reasoning, the California Court of Appeals previously concluded in *Hanif* that the proper measure of damages is the amount actually paid for medical services pursuant to a contractually agreed-upon rate, rather than the face amount of original billings. As that court stated:

> The question here involves the application of that measure, i.e., whether the "reasonable value" measure of recovery means that an injured plaintiff may recover from the tortfeasor more than the actual amount he paid or for which he incurred liability for past medical care and services. Fundamental principles underlying recovery of compensatory damages in tort actions compel the following answer: no.

*Hanif*, 246 Cal. Rptr. at 194-95; *see also Nishihama v. City and County of San Francisco*, 112 Cal. Rptr. 2d 861, 866-67 (Cal. App. 2001).

17

¶24 But, as Lopez points out, those cases represent a distinct minority view and have not been followed by other courts.[9] A majority of courts have concluded, contrary to *Moorhead* and *Hanif*, that plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts written off from the bills pursuant to contractual rate reductions. *See, e.g., Lindholm v. Hassan*, 369 F. Supp. 2d 1104, 1110 (D.S.D. 2005); *Mitchell v. Haldar*, 883 A.2d 32, 40 (Del. 2005); *Hardi v. Mezzanotte*, 818 A.2d 974, 985 (D.C. 2003); *Olariu v. Marrero*, 549 S.E.2d 121, 123 (Ga. Ct. App. 2001); *Bynum*, 101 P.3d at 1160-62; *Arthur v. Catour*, 803 N.E.2d 647, 650 (Ill. App. 2004); *Bozeman v. Louisiana*, 879 So. 2d 692, 705-06 (La. 2004); *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135, 1139-40 (Miss. 2002); *Brown v. Van Noy*, 879 S.W.2d 667, 676 (Mo. App. 1994); *Robinson*, 828 N.E.2d at 673; *Haselden v. Davis*, 579 S.E.2d 293, 294 (S.C. 2003); *Acuar v. Letourneau*, 531 S.E.2d 316, 322 (Va. 2000); *Koffman*, 630 N.W.2d at 208.

¶25 These courts have decided that, for purposes of the collateral source rule, no rational distinction exists between payments made by an insurance carrier on behalf of an

---

[9]In addition, as Professor Dobbs has observed: "If confined to their facts, both [*Hanif* and *Moorhead* ] could be interpreted narrowly. *Hanif* involved a Medi-Cal (Medicaid) public assistance plaintiff and might be limited to such cases." 2 Dan B. Dobbs, *The Law of Torts*, § 380 (Supp. 2005), at 134 n.23.25. And, he notes, in *Moorhead* "the tortfeasor and the health care provider were in fact the same." *Id*. at 134 n.23.35; *see also Hardi v. Mezzanotte*, 818 A.2d 974, 985 (D.C. 2003) ("[r]egardless of any broad language in the opinion in *Moorhead*, that case involved medical services provided by the tortfeasor itself so that an application of the collateral source rule would have required, in effect, double payment").

injured plaintiff, *see Brown*, 879 S.W.2d at 676; a healthcare provider's acceptance of reduced payments from health maintenance organizations (HMOs) and government payors, *see Mitchell*, 883 A.2d at 40; or a provider's write-off of portions of billed charges to patients pursuant to contractual relationships with HMOs or government payors. *See Acuar*, 531 S.E.2d at 322.[10] Illustrative of this view is *Acuar*, in which the Virginia Supreme Court stated:

> [Defendant] contends that the collateral source rule is not applicable to the present case because [plaintiff] is not, and never will be, legally obligated to pay those portions of his medical bills that were written off, nor were those amounts paid on his behalf. According to [defendant], the amounts written off by health care providers are not benefits derived from a collateral source, and to allow [plaintiff] to recover such amounts as damages in this tort action would create a double recovery or windfall in his favor.
>
> . . . .
>
> . . . That argument overlooks the fundamental purpose of the [collateral source] rule, explained above, to prevent a tortfeasor from deriving any benefit from compensation or indemnity that an injured party has received from a collateral source. In other words, the focal point of the collateral source rule is not whether an injured party has "incurred" certain medical expenses. Rather, it is whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor.

---

[10]In addition, as noted in ¶ 15, *supra*, "a plaintiff could recover from a tortfeasor for the reasonable value of medical services provided even if those services were provided gratuitously." *Mitchell v. Haldar*, 883 A.2d 32, 38 (Del. 2005). Safeway does not explain how that type of "gift" scenario, in which a claimant can recover for charges never incurred or even billed, differs in any material way from the situation presented here.

19

[Plaintiff] is entitled to seek full compensation from [defendant]. Based on the cases cited above dealing with the collateral source rule, we conclude that [defendant] cannot deduct from that full compensation any part of the benefits [plaintiff] received from his contractual arrangement with his health insurance carrier, whether those benefits took the form of medical expense payments or amounts written off because of agreements between his health insurance carrier and his health care providers. Those amounts written off are as much of a benefit for which [plaintiff] paid consideration as are the actual cash payments made by his health insurance carrier to the health care providers. The portions of medical expenses that health care providers write off constitute "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor . . . ."

This conclusion is consistent with the purpose of compensatory damages, which is to make a tort victim whole. However, the injured party should be made whole by the tortfeasor, not by a combination of compensation from the tortfeasor and collateral sources. The wrongdoer cannot reap the benefit of a contract for which the wrongdoer paid no compensation. The extent of [defendant's] liability to [plaintiff] cannot be "measured by deducting financial benefits received by [plaintiff] from collateral sources." In other words, "it is the tortfeasor's responsibility to compensate for all harm that he [or she] causes, not confined to the net loss that the injured party receives." Restatement (Second) of Torts § 920A cmt. b (1977).

To the extent that such a result provides a windfall to the injured party, we have previously recognized that consequence and concluded that the victim of the wrong rather than the wrongdoer should receive the windfall.

531 S.E.2d at 321-23 (citations omitted); *see also Radvany v. Davis*, 551 S.E.2d 347, 348

(Va. 2001) ("Payments made to a medical provider by an insurance carrier on behalf of an

insured and amounts accepted by medical providers are one and the same. Regardless of

20

the label used, they are payments made by a collateral source and, thus, are not admissible in evidence for that reason.").

¶26 We find the reasoning in *Acuar* sound and consistent with Arizona's broad application of the collateral source rule and the clear majority view.[11] Therefore, we hold that Lopez was entitled to claim and recover the full amount of her reasonable medical expenses for which she was charged, without any reduction for the amounts apparently written off by her healthcare providers pursuant to contractually agreed-upon rates with her medical insurance carriers. As this court has stated, the collateral source rule

> is an attempt to resolve a basic conflict between two guiding principles of tort law, namely, (1) the limitation of compensation to the injured party to the amount necessary to make him whole and (2) the avoidance of a windfall to the

---

[11]Recognizing that majority view, Professor Dobbs states:

> Because the provider who writes off the balance usually does so in compliance with terms of a contract with the insurer or Medicare, it is possible to conceptualize the write-off as a collateral source benefit paid for by way of the insurer's contractual agreement with the provider. Alternatively, some courts have said that whether or not the write-off is a true collateral source situation, the rationale and policy behind the collateral source rules, statutory or common law, apply. . . . In line with the basic measure of damages—the reasonable value of the medical services rendered—most courts passing on the issue in recent years have made rulings that permit the plaintiff to prove all of the reasonable medical charges, even though some of those charges were waived by the provider.

2 Dan B. Dobbs, *The Law of Torts*, § 380 (Supp. 2005), at 132-33.

21

> tortfeasor if a choice must be made between him and the injured party.

*Hall*, 119 Ariz. at 74, 579 P.2d at 578; *see also Mitchell*, 883 A.2d at 38. "'Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.'" *Acuar*, 531 S.E.2d at 323, *quoting Schickling v. Aspinall*, 369 S.E.2d 172, 174 (Va. 1988).

¶27      This court has recognized, however, that "commentators have generally opposed the rule." *Hall*, 119 Ariz. at 74 n.1, 579 P.2d at 578 n.1 (citing articles); *see also Eastin v. Broomfield*, 116 Ariz. 576, 583, 570 P.2d 744, 751 (1977) ("The validity of these rationales [in support of the collateral source rule] has been questioned by commentators . . . . In a day of increased insurance protection, this rule has allowed plaintiffs to effectuate double and even triple recovery as a result of injuries received by them."); 2 Dan B. Dobbs, *Law of Remedies*, § 8.6(3), at 496 (2d ed. 1993) ("[I]f the collateral source rule were abolished, the plaintiff will have paid for security and not for the opportunity of a double recovery. He has paid for more only because the law, by allowing double recovery, in effect requires him to pay for more."); 2 Dan B. Dobbs, *The Law of Torts*, § 380, at 1059 (2001) ("Considering the matter prospectively rather than after the fact, it may well be that compensation could be more cheaply secured without the collateral source rule.").

¶28      We also recognize that the legislature is free to limit or abandon the collateral source rule in various areas, as it did in the medical malpractice arena. *See* A.R.S. § 12-565 (permitting medical malpractice defendant to introduce evidence of collateral source

22

payments, which the trier then may consider in assessing damages); *see also Eastin*, 116 Ariz. at 584, 570 P.2d at 752 (upholding constitutionality of § 12-565 and stating, "[w]e believe that the legislature has the right to abolish the collateral source rule as it affects medical malpractice cases just as it has done in the workmen's compensation field"); *Goble v. Frohman*, 901 So. 2d 830, 833 (Fla. 2005) (contractual discounts, representing difference between amounts billed by claimant's healthcare providers and amounts paid to them pursuant to fee schedules in contracts between healthcare providers and HMO, fit within statutory definition of "collateral sources"; therefore, amount of contractual discounts, for which no right of reimbursement or subrogation existed, was amount that should be set off against award of compensatory damages to plaintiff). But, absent any such limiting statute or supreme court authority suggesting that the collateral source rule does not control in a situation such as that presented here, we join with the majority of courts in finding it applicable.

## III

¶29 In sum, the trial court did not err in denying Safeway's pretrial motion in limine. Likewise, the court did not abuse its discretion in denying Safeway's motion for new trial, which re-urged the same argument made in its pretrial motion. *See Larsen v. Decker*, 196 Ariz. 239, ¶ 27, 995 P.2d 281, 286 (App. 2000) (we review denial of motion for new trial for manifest abuse of discretion). Therefore, the trial court's judgment and its order denying the motion for new trial are affirmed.

                                     _____
                                     JOHN PELANDER, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Presiding Judge


_____
WILLIAM E. DRUKE, Judge*


*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed December 6, 2005.