249 P.3d 1104 (2011)
SOUTHWEST FIDUCIARY, INC., as Conservator of Rhonda Lundy, a single woman, Plaintiff/Appellee/Cross-Appellant, and
James Flynn, a single man, Plaintiff/Appellee,
v.
ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, an Arizona state agency; Anthony D. Rodgers, Director of AHCCCS; Todd J. Jensen, AHCCCS Administrative Hearing Decision Administrator, Defendants/Appellants/Cross-Appellees.
Nos. 1 CA-CV 10-0300, 1 CA-CV 10-0301.
Court of Appeals of Arizona, Division 1, Department B.
March 10, 2011.
*1105 Goldberg & Osborne By Allen D. Bucknell, Phoenix, Attorneys for Plaintiff/Appellee/Cross-Appellant, Southwest Fiduciary, Inc.
Ira W. Schiffman Attorney at Law and Law Offices of David L. Abney By David L. Abney and Levenbaum & Cohen By Geoffrey M. Trachtenberg, Phoenix, Attorneys for Plaintiff/Appellee James Flynn.
Deconcini McDonald Yetwin & Lacy, P.C. By Gary F. Urman, Tucson, Attorneys for Defendants/Appellants, Arizona Health Care Cost Containment System Administration, Anthony D. Rodgers and Todd J. Jensen.

OPINION
JOHNSEN, Judge.
¶ 1 In these consolidated cases we address a question the Supreme Court left open in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), concerning the lien rights of a state Medicaid plan after it has paid medical expenses for a victim who subsequently settles with a tortfeasor for less than the full amount of her overall damages. We conclude that the state plan may recover no more than the portion of the victim's settlement that represents recovery of the plan's payments on behalf of the victim, less a deduction for litigation expenses.

*1106 FACTS AND PROCEDURAL BACKGROUND
¶ 2 Southwest Fiduciary, Inc. was appointed conservator of Rhonda Lundy after she was injured severely in an auto accident. Lundy sued third parties in the accident and ultimately settled her case for $842,696. According to a mediator, the "full value" of Lundy's damages was between $3,000,000 and $4,000,000. Included in that total were past medical bills of $920,000. According to the mediator, Lundy agreed to compromise her claims because of "difficult liability issues." The Arizona Health Care Cost Containment System ("AHCCCS"), which had paid $268,080 toward Lundy's medical expenses, filed a lien for that amount against the settlement.
¶ 3 James Flynn was injured in a separate auto accident. Although the estimated value of his damages was $250,000, including billed medical expenses of $138,710, he settled his third-party tort claim for $100,000. AHCCCS, which had paid $51,760 toward Flynn's medical expenses, sought to enforce a lien for that amount against his recovery.
¶ 4 The settlements that Lundy and Flynn entered into with their respective tortfeasors resolved their claims for all manner of damages, including past medical expenses, future medical expenses, pain and suffering, lost wages and other out-of-pocket costs. As is customary, Lundy and Flynn did not limit their medical-expense claims to the amounts they actually paid or were paid on their behalf, but demanded reimbursement from the tortfeasors of the total amount billed by hospitals and other medical providers that treated them.[1]
¶ 5 During separate administrative proceedings, the issue was whether AHCCCS's lien rights were to be measured by what it actually paid or by the victims' total billed medical expenses. Although the director of AHCCCS decided in favor of AHCCCS, on appeal, the superior court in each case held AHCCCS's lien for payments it had made on behalf of the victim would be reduced by the ratio that the settlement amount bore to the victim's total claimed damages.[2]
¶ 6 We have jurisdiction over these consolidated appeals pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-2101(B) (2007) and 12-120.21(A)(1) (2007).

DISCUSSION

A. Standard of Review.
¶ 7 AHCCCS challenges the superior court's interpretation of Arizona's healthcare lien statute, A.R.S. § 36-2915 (2009), and related federal statutes.[3] Statutory interpretation is a question of law that we review de novo. Libra Group, Inc. v. State, 167 Ariz. 176, 179, 805 P.2d 409, 412 (1991).

B. Medicaid, AHCCCS and Ahlborn.

¶ 8 Medicaid was established in 1965 to provide medical care to qualified low-income individuals. See 42 U.S.C. § 1396 (2006). Each state administers its own Medicaid plan, which must conform to federal requirements. See, e.g., A.R.S. §§ 36-2901 to -2999.08 (2009). In Arizona, AHCCCS administers Medicaid services. Arizona Ass'n of Providers for Persons with Disabilities v. State, 223 Ariz. 6, 10-11, ¶ 4, 219 P.3d 216, 220-21 (App.2009).
¶ 9 Federal law requires states to establish procedures by which state Medicaid plans may be reimbursed by third-party tortfeasors for payments the plans make on behalf of injured persons to whom tortfeasors are legally liable. 42 U.S.C. § 1396a(a)(25)(B), (H) (2006); see also Ahlborn, 547 U.S. at 275-76, 126 S.Ct. 1752. In compliance with *1107 federal law, A.R.S. § 36-2915(A) provides in relevant part:
[AHCCCS] is entitled to a lien for the charges for hospital or medical care and treatment of an injured person for which [AHCCCS] or a contractor is responsible, on any and all claims of liability or indemnity for damages accruing to the person to whom hospital or medical service is rendered, or to the legal representative of such person, on account of injuries giving rise to such claims and which necessitated such hospital care and treatment.
¶ 10 Applying federal law, the Supreme Court held in Ahlborn that when a Medicaid recipient settles with a tortfeasor for an amount less than her full damages, Medicaid's share of the settlement may not exceed the portion of the settlement that represents medical expenses. 547 U.S. at 280, 126 S.Ct. 1752. The Medicaid recipient in Ahlborn incurred damages of about $3,040,000, but settled with the tortfeasor for $550,000. Id. at 269, 274, 126 S.Ct. 1752. The Arkansas Department of Health and Human Services stipulated that the settlement included only $35,581 attributable to past medical expenses, but asserted a lien for $215,645, the amount it had paid for the victim's medical care. Id. at 274, 280-81, 126 S.Ct. 1752. The Supreme Court concluded that the state plan could not recover more than the portion of the settlement representing payments for medical care. Id. at 280-81, 126 S.Ct. 1752. Thus, it limited the state's recovery to the portion of the settlement attributable to past medical expenses, $35,581. Id.[4]
¶ 11 In Ahlborn the issue was whether the state Medicaid plan could recover the entirety of its lien against the victim's settlement, and the parties stipulated to the amount the state would recover if the Court ruled against the state. Id. at 280-81, 126 S.Ct. 1752. We address in this case an issue not presented in Ahlborn: Whether a Medicaid lien may be enforced against the portion of a tort settlement that represents medical expenses that are billed but not paid because medical providers have accepted discounted payments in full satisfaction of their bills. See generally Bolanos v. Superior Court, 169 Cal.App.4th 744, 87 Cal.Rptr.3d 174, 186 (2008) (Ahlborn does not require specific formula in calculating amount of Medicaid lien that is enforceable against settlement); Lugo v. Beth Israel Med. Ctr., 13 Misc.3d 681, 819 N.Y.S.2d 892, 897 (N.Y.Sup.Ct.2006) (rejecting application of any specific formula but recognizing the usefulness of the formula applied in Ahlborn).
¶ 12 This issue arises because of the rule in Arizona that injured persons may sue in tort to recover the full amount of their billed medical expenses caused by the tort, even though they may not have paid that amount or (any amount) of medical expenses. This "collateral source rule" prohibits tortfeasors from avoiding liability for damages in situations in which an injured party has been compensated by a third party. Lopez v. Safeway Stores, Inc., 212 Ariz. 198, 202, ¶ 13, 129 P.3d 487, 491 (App.2006). Accordingly, when a plaintiff in a personal injury case calculates damages due from the tortfeasor, the number she includes for medical expenses is the full billed amount of those expenses, even though her health insurer (or AHCCCS) may have negotiated to pay less than that amount on her behalf. As noted, for example, supra ¶¶ 2-3, Lundy's billed medical expenses were $920,000; AHCCCS satisfied those expenses by paying $268,000; Flynn's billed medical expenses were $139,000, but AHCCCS satisfied those expenses by paying $52,000.
¶ 13 Because the parties in Ahlborn stipulated to the relevant formula, that case did not resolve whether the "medical expenses" component of a tort settlement against which a Medicaid lien may be imposed is measured by the payments Medicaid actually made for medical services or by the billed value of those services. Depending on the facts of a particular case, the difference may be significant. In the Flynn case, for example, the negotiated settlement represented 40 percent *1108 of the estimated value of the case.[5] Under the formula applied by stipulation in Ahlborn and now urged by Flynn, AHCCCS's recovery would be calculated by multiplying the amount AHCCCS paid in past medical expenses, $51,760, by 40 percent. The result ($20,704) then would be reduced to $13,043 to account for litigation expenses. AHCCCS, however, argues its lien should be based on the proportion of Flynn's total damages represented by billed medical expenses. It applies that proportion (56.5 percent) against the net settlement amount (the settlement amount less attorney's fees and costs), and arrives at a lien of $32,640.[6]

C. Federal and State Law Require that AHCCCS's Lien Recovery Be Calculated Based on What AHCCCS Has Paid, Not on Total Billed Medical Expenses.
¶ 14 The statute under which AHCCCS asserted the liens at issue, A.R.S. § 36-2915(A), limits the amount of any such lien to "the charges . . . for which [AHCCCS]. . . is responsible." Consistent with 42 U.S.C. 1396a(a)(25)(B), which requires states to enact measures by which a state may seek "reimbursement" for Medicaid assistance payments when a third party is found liable for healthcare services, we interpret "charges . . . for which [AHCCCS] . . . is responsible" to mean charges actually paid by AHCCCS. Applying that principle to a tort settlement, AHCCCS's share of a settlement should be calculated based on amounts it has paid for the victim's medical care, not based on larger amounts reflected in bills issued by medical providers that later agree to accept less than the billed amounts as full payment.
¶ 15 Our conclusion is supported by the statute the Supreme Court labeled the Medicaid "anti-lien" provision. See Ahlborn, 547 U.S. at 284, 126 S.Ct. 1752. The Court pointed out that 42 U.S.C. § 1396p (with exceptions not relevant here) bars states "from placing liens against, or seeking recovery of benefits paid from, a Medicaid recipient." Id. at 283, 126 S.Ct. 1752. "Read literally and in isolation, the anti-lien prohibition contained in § 1396p(a) would appear to bar even a lien on that portion of the settlement proceeds that represents payments for medical care." Id. at 284, 126 S.Ct. 1752. The Court concluded that the reimbursement allowed by 42 U.S.C. § 1396a constitutes an exception to the general prohibition of liens against Medicaid recipients. Id. As applied against settlement proceeds, the Court held, that exception allows only a lien that "encumbers proceeds designated as payments for medical care." Id. Beyond that, the Court held, the anti-lien provision "precludes attachment or encumbrance of the remainder of the settlement." Id.
¶ 16 AHCCCS argues that Ahlborn allowed for the possibility of a lien based not on payments made by a Medicaid plan but on billed medical expenses incurred by the Medicaid recipient. It points to the Court's description of the issue in that case as "whether [the state] can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses." Id. at 280, 126 S.Ct. 1752. From this, AHCCCS argues that the Court intended to permit a lien against a settlement of up to the amount of the settlement that represents total billed medical expenses, rather than some lower number represented by actual Medicaid payments.
¶ 17 Although the Court did not address the issue, we take from its emphasis on the anti-lien provision the general rule that a state plan may recover from a victim's tort settlement no more than the portion of the settlement attributable to payments the plan has made on behalf of the victim. The Court recognized that a typical tort settlement may include not only amounts representing medical costs, but also lost wages and other forms of damage. Id. at 280, 126 S.Ct. 1752. Given the Court's refusal to permit the state *1109 plan in that case to recover from the other components of the settlement, we conclude federal law does not allow a state Medicaid plan to enforce its lien against any portion of a tort settlement not attributable to the plan's actual payments.
¶ 18 AHCCCS argues that limiting its lien in such fashion allows a Medicaid recipient an unfair windfall  the amount of the settlement that represents billed medical expenses in excess of AHCCCS's actual payments. Any "windfall" is a consequence of the collateral source rule, however, and may exist whenever the victim of a tort receives a judgment or negotiates a settlement that includes a component for medical expenses. See Lopez, 212 Ariz. at 206-07, ¶ 25, 129 P.3d at 495; Restatement (Second) of Torts § 920A (1979) cmt. b. Under this rule, a tort victim arguably is entitled to recover two sums relating to her medical expenses-the amounts actually paid (by the victim, her insurer or, as in this case, a government payor) and the amounts billed but not paid because medical providers have agreed to accept less in payment. We take Ahlborn's warning that 42 U.S.C. § 1396p(a) bars any lien beyond "proceeds designated as payments for medical care," 547 U.S. at 284, 126 S.Ct. 1752, to mean that a Medicaid lien may be enforced only against the portion of a settlement attributable to payments the state plan has made on behalf of the victim.[7]
¶ 19 AHCCCS argues that while the collateral source rule justifiably may favor an innocent victim over a tortfeasor, the same logic does not justify favoring the victim over a government payor.
¶ 20 In addressing this contention, we first note that Arizona's collateral source rule allows a victim whose medical expenses are paid by a government payor to seek recovery of those expenses from a tortfeasor. Lopez, 212 Ariz. at 206-07, ¶ 25, 129 P.3d at 495; see Restatement (Second) of Torts § 920A (1979) cmt. b ("If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him."); id. cmt. c(4) (Social Security and other welfare benefits are subject to collateral source rule).
¶ 21 Nevertheless, the Arizona legislature narrowed the benefit AHCCCS members may receive from the collateral source rule when it complied with the federal directive by enacting A.R.S. § 36-2915. As we have said, that statute creates in AHCCCS a right to a lien "for the charges . . . for which [AHCCCS] is responsible." Thus, although the collateral source rule would allow an injured person to keep for herself whatever she recovers in a judgment or settlement for medical expenses paid by her private insurer, the same is not true when those medical expenses are paid by AHCCCS. Compare Allstate Ins. Co. v. Druke, 118 Ariz. 301, 304, 576 P.2d 489, 492 (1978) (private insurer may not recover from insured's tort recovery for medical expenses incurred on behalf of insured), with A.R.S. § 36-2915. But the limitation the legislature created in § 36-2915 only applies to amounts that AHCCCS pays on behalf of a plan member, see supra ¶ 14; it does not go so far as to include billed medical expenses that AHCCCS has not paid. To the extent that state law affects the issue posed in this appeal, we decline to expand the legislature's limitation on the collateral source rule to allow AHCCCS a greater share of the benefit the rule reserves for a tort victim in the usual case.
¶ 22 AHCCCS argues In re Matey, 147 Idaho 604, 213 P.3d 389 (2009), supports its claimed lien. The Medicaid recipient in that case settled her personal injury claim for just six percent of its full value. Id. at 391 n. 4. At the time of the settlement, Medicaid had *1110 paid $60,752 in medical expenses; according to the court, other "past medical expenses paid" totaled $345,562. Id. An Idaho statute directed that the state plan "shall have priority to any amount received from a third party or entity which can reasonably be construed to compensate the recipient for the occurrence giving rise to the need for medical assistance." Id. at 393. Enforcing that statute, the court accepted the state's contention that it was entitled to be reimbursed from any settlement amounts designated for medical expenses, past or future. In holding that the federal anti-lien provision did not prevent the state from recovering funds allocated to other medical expenses, the court remarked that "the Supreme Court specifically stated that damages received for medical care did not constitute property subject to the anti-lien provisions." Id. at 394 (citing Ahlborn, 547 U.S. at 284, 126 S.Ct. 1752).[8]
¶ 23 But the Supreme Court's precise statement was that "the exception carved out by §§ 1396a(25) and 1396(a) is limited to payments for medical care." Ahlborn, 547 U.S. at 284-85, 126 S.Ct. 1752 (emphasis added). The Ahlborn court's decision to limit the lien exception to that portion of a settlement allocated to medical payments supports our conclusion in these cases that AHCCCS's lien may not extend beyond those amounts. In any event, at issue in Matey were settlement amounts representing paid medical expenses, not, as here, components of a settlement attributable to billed but not paid medical expenses.
¶ 24 AHCCCS's reliance on Smith v. Agency for Health Care Administration, 24 So.3d 590 (Fla.Dist.Ct.App.2009), likewise is misplaced. The court in that case allowed reimbursement of $122,783.87, the full amount of the state plan's payments, from a settlement of $2.2 million because the tort victim did not show that the medical expense portion of her settlement was less than what the state plan paid. Id. at 592. In a footnote, the court posed a hypothetical case in which the Florida plan would be able to recover the entire portion of a settlement attributable to medical expenses, even in excess of payments actually incurred. Id. at 592 n. 1. We are not persuaded by the Florida court's suggestion because unlike in Arizona, a tort victim in Florida may not recover damages for medical expenses beyond those a provider has negotiated with Medicaid to accept in full payment. See Thyssenkrupp Elevator Corp. v. Lasky, 868 So.2d 547, 549 (Fla.Dist.Ct. App.2003) (citing Fla. Stat. Ann. § 768.76(1) (2003)).
¶ 25 Finally, AHCCCS argues that pursuant to 42 U.S.C. § 1396k(b), when a state Medicaid plan sues to collect payments from a third party for medical expenses, it is entitled to reimburse itself fully before remitting the remainder to the tort victim. But § 1396k is not at issue here. That provision requires states to require Medicaid recipients to assign their rights to recover "payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). In these consolidated cases, AHCCCS is not enforcing the victims' rights by way of any assignment; rather than sue the tortfeasors in the names of the tort victims, it chose instead to enforce its lien rights against settlements the tort victims negotiated for themselves. Compare A.R.S. § 36-2915 (AHCCCS lien rights) with A.R.S. § 12-962 (2003) (State's right to recover from tortfeasor the "reasonable value" of the "medical care and treatment to a person who is injured").[9] In any event, the Supreme Court held in Ahlborn that even under the federal assignment statute, "the State's assigned rights extend only to recovery of payments for medical care." 547 U.S. at 281-82, 126 S.Ct. 1752 (emphasis added).

D. Resolution of These Cases.
¶ 26 Having held that AHCCCS may enforce its lien rights only against that portion of a tort settlement attributable to its payments *1111 on behalf of the victim, we must determine the applicability of that rule to these cases.
¶ 27 AHCCCS directs us to Russell v. Agency for Health Care Administration, 23 So.3d 1266 (Fla.Dist.Ct.App.2010), which allowed a state Medicaid plan to recover the full amount of medical costs it paid even though the tort victim's settlement was only one-tenth of the full value of her damages. Id. at 1267-68. As here, the Medicaid recipient in that case argued the state should be entitled to recover only a tenth of its lien, citing Ahlborn. Id. The Florida court observed that Ahlborn ultimately approved but did not require the formula to which the parties there stipulated. Id. at 1268. Noting the victim had negotiated her settlement "against the backdrop" of a Florida statute that required Medicaid to be reimbursed up to 50 percent of the total settlement, the court concluded the state plan should be fully reimbursed from the settlement. Id. at 1269 (citing Ahlborn, 547 U.S. at 272, 126 S.Ct. 1752); see also McMillian v. Stroud, 166 Cal.App.4th 692, 83 Cal.Rptr.3d 261, 269-70 (2008) (affirming order fully reimbursing state Medicaid plan from settlement that represented a tenth of full damages; in violation of state law, tort victim had failed to notify state plan of settlement; victim should bear burden of proving allocation of settlement proceeds because he had exclusive access to information about settlement negotiations).
¶ 28 In the cases before us, however, AHCCCS does not argue that the settlements disproportionately undervalued the medical payments AHCCCS made on behalf of Lundy and Flynn. Its only argument, which we have rejected, is that it should be reimbursed from settlement amounts representing billed medical expenses for which neither it nor the tort victims are liable. Under the circumstances, we cannot conclude the superior court erred in presuming that the settlements in these cases should be attributed proportionately to their various components. In Lundy's case, the court concluded that because the settlement represented 24 percent of the value of her case, AHCCCS was entitled to recover 24 percent of what it paid toward her medical expenses, and in Flynn's case, 40 percent. See Lima v. Vouis, 174 Cal.App.4th 242, 94 Cal.Rptr.3d 183, 195-97 (2009) (application of Ahlborn requires "past medical expenses [to be] distinguished in the settlement from other damages on the basis of a rational approach"; suggesting that when settlement is found to be reasonable, "a fair approach" to allocation is to conclude that recovery for past medical expenses was received in same proportion that settlement bore to total claimed damages).
¶ 29 When the proper allocation of the settlement amount to the damage component represented by AHCCCS payments is disputed, the better course is to seek the intervention of the court. See Ahlborn, 547 U.S. at 288 n. 18, 126 S.Ct. 1752; Price v. Wolford, 608 F.3d 698, 707 (10th Cir.2010) (suggesting evidence sufficient to prove allocation). Because AHCCCS did not challenge the allocation in either of these cases, however, we adopt the superior court's presumption that the settlements in these cases include the same proportion of AHCCCS's payments as the settlements bear to Lundy's and Flynn's total claimed damages.

E. AHCCCS Did Not Abuse Its Discretion in Refusing to Reduce Its Lien Against the Lundy Settlement.
¶ 30 Southwest argues on cross-appeal that the director of AHCCCS abused his discretion by not eliminating the agency's lien against the Lundy settlement pursuant to A.R.S. § 36-2915(H) and (I). These provisions require AHCCCS to consider compromising its lien based on "[t]he nature and extent of the patient's injury or illness," available "insurance or other sources of indemnity," and "[a]ny other factor relevant for a fair equitable settlement under the circumstances of a particular case." AHCCCS is required to compromise a claim "if, after considering the factors . . ., the compromise provides a settlement of the claim that is fair and equitable." A.R.S. § 36-2915(H).
¶ 31 We will reverse the director's refusal to compromise AHCCCS's claim only if "it is arbitrary, capricious, or an abuse of discretion." Thompson v. Ariz. Dep't of Econ. *1112 Sec., 127 Ariz. 293, 294, 619 P.2d 1070, 1071 (App.1980). Although Lundy's injuries are extensive, it is undisputed that AHCCCS likely will pay her future medical costs for the remainder of her life. Under the circumstances, we cannot conclude the director abused his discretion in refusing to compromise the AHCCCS lien.

CONCLUSION
¶ 32 For the reasons stated, we hold that AHCCCS's lien rights pursuant to A.R.S. § 36-2915 are limited to that portion of a tort settlement that represents recovery of medical expenses actually paid by AHCCCS. AHCCCS does not dispute that in such circumstances, its lien should be reduced by a proportionate amount to account for litigation expenses. Accordingly, on the records presented, we affirm the superior court's orders. We grant Flynn's request for reasonable attorney's fees pursuant to A.R.S. § 12-348(A)(2) (2003) and grant Flynn and Southwest their costs on appeal contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.
CONCURRING: DONN KESSLER, Presiding Judge and SHELDON H. WEISBERG, Judge.
NOTES
[1] Hospitals and other medical providers frequently negotiate with government programs and private medical insurers to accept lower amounts in satisfaction of their billed charges. See Banner Health v. Med. Sav. Ins. Co., 216 Ariz. 146, 150, ¶ 14, 163 P.3d 1096, 1100 (App.2007); Lopez v. Safeway Stores, Inc., 212 Ariz. 198, 202, ¶ 12, 129 P.3d 487, 491 (App.2006).
[2] Thus, if a hypothetical victim had settled with the tortfeasor for one-half of her total claimed damages, the superior court's formula would allow AHCCCS to recover from the settlement only one-half of the amount it had paid on behalf of the victim.
[3] Absent material revisions, we cite a statute's current version.
[4] The stipulation in Ahlborn resulted in the equivalency that the superior court applied in these cases: The plaintiff settled her case for roughly one-sixth of her full damages, and the state Medicaid plan was reimbursed for roughly one-sixth of what it had paid for her care. 547 U.S. at 269, 274, 281, 126 S.Ct. 1752.
[5] AHCCCS does not dispute Flynn's assertion that his total damages (calculated pursuant to the collateral source rule) were some $250,000.
[6] Applying the Ahlborn formula in the Lundy case would result in a Medicaid lien of $35,221 (i.e., $842,696/$3,500,000 = 24% times $268,000 = $64,320, reduced to account for litigation expenses). By contrast, using the same formula it employed in the Flynn case, AHCCCS asserts it is entitled to a lien of $115,000 against Lundy's recovery.
[7] According to the record, a hospital filed a lien against the settlement negotiated in Lundy's case but eventually agreed to release the lien. Our record does not disclose the extent, if any, to which Lundy's settlement included compensation for any amount she herself may have paid toward her medical bills. The parties' briefs seem to assume that AHCCCS was the only payor in both of these consolidated cases, and our analysis presumes that to be true. Cf. Ahlborn, 547 U.S. at 282, 126 S.Ct. 1752 (discussing state plans' rights under 42 U.S.C. § 1396k(b), which allows a plan to take an assignment of recipient's right to sue for "damages representing payment for medical care").
[8] AHCCCS does not argue in these cases that it is entitled to recover from any portion of these settlements that may have been designated for future medical expenses, and we express no opinion on the merit of such an argument.
[9] As the Supreme Court observed, it is not clear that the Medicaid assignment statute, 42 U.S.C. § 1396k, "applies in cases where the State does not actively participate in the litigation." 547 U.S. at 281, 126 S.Ct. 1752.