2015 COA 81

**STATE OF COLORADO DEPARTMENT OF HEALTH CARE POLICY AND FINANCING, Plaintiff–Appellant and Cross–Appellee,**

v.

**S.P., Defendant–Appellee and Cross–Appellant.**

**Court of Appeals No. 14CA0249**

Colorado Court of Appeals, Div. VII.

Announced June 18, 2015

Cynthia H. Coffman, Attorney General, Alisa Campbell, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Solem, Mack & Steinhoff, P.C., R. Eric Solem, Englewood, Colorado; Bogue Paoli & Thomas LLC, Fred Paoli, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by JUDGE NEY *

¶ 1 S.P. was injured in a snowboarding accident at a ski area. She applied for Medicaid assistance and was accepted. Over the course of several years, Medicaid paid $142,779 for her medical care necessitated by the accident. S.P. sued the ski area, alleging negligence, and eventually settled the case for one million dollars. Medicaid was entitled to a statutory lien against the settlement for repayment of the medical assistance it had provided. § 25.5–4–301(5)(a), C.R.S.2014. The settlement agreement, however, did not

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2014.

specify the portion of the settlement amount attributable to medical expenses, as opposed to other categories of damages. The question was: how much was S.P. required to repay?

¶ 2 After the settlement, S.P. and the Medicaid administration agency could not agree on a repayment amount. The agency—Colorado Department of Health Care Policy and Financing (the Department)—sued S.P. to enforce its lien. The trial court was then required to determine the repayment amount. The parties informed the court how they each believed the repayment amount should be calculated. The court applied its own formula, a hybrid of S.P.'s method and the Department's, and ordered S.P. to repay Medicaid $25,375. Both parties now appeal from the court's judgment. We affirm and remand for the trial court to release the funds held in the court registry accordingly.

## I. Apportionment of Third–Party Settlement Funds for Medicaid Lien Purposes

### A. Medicaid Third–Party Reimbursement Requirements

¶ 3 "Medicaid is a cooperative federal-state program that provides financial assistance to states to subsidize certain costs of medical treatment for low-income individuals." *Christy v. Ibarra*, 826 P.2d 361, 363 (Colo.App.1991); *see generally* 42 U.S.C. § 1396a (2012). "Although participation in the Medicaid program is optional, once a state elects to participate, it must comply with the federal statutory scheme and the regulations promulgated by the Secretary of Health and Human Services." *Christy*, 826 P.2d at 363.

¶ 4 As a condition of Medicaid participation, federal law requires states to seek reimbursement from liable third parties for care and services provided. *See* 42 U.S.C. §§ 1396a(a)(25), 1396k (2012); 42 C.F.R. §§ 433.138 to .140 (2015). Once a state has identified a legally liable third party, it must seek reimbursement for medical assistance provided "to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(B). This federal requirement is embodied by Colorado's third-party liability statute. *See* § 25.5–4–301(4)-(6); *see also* 42 U.S.C.

§ 1396a(a)(25)(H) (mandating that states have laws establishing their right to reimbursement). Colorado's statute gives the Department the right to an assignment from the Medicaid recipient for covered medical expenses recovered from a responsible third party. § 25.5–4–301(4); *see also* 42 U.S.C. § 1396k(a)(1)(A) (requiring Medicaid recipients to assign to the state their rights to recover payment for medical care provided from third parties).

¶ 5 The Colorado statute also prescribes a collection mechanism by way of an automatic lien against a third-party settlement or judgment:

> When the state department has furnished medical assistance to or on behalf of a recipient ... for which a third party is liable, the state department shall have an automatic statutory lien for all such medical assistance. The state department's lien shall be against any judgment, award, or settlement in a suit or claim against such third party and shall be *in an amount that shall be the fullest extent allowed by federal law as applicable in this state, but not to exceed the amount of the medical assistance provided.*

§ 25.5–4–301(5)(a) (emphasis added). The italicized portion of the statute was added in 2009, apparently in response to the United States Supreme Court's opinion in *Arkansas Department of Health & Human Services v. Ahlborn*, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). *See* Ch. 100, sec. 1, § 25.5–4–301(5)(a), 2009 Colo. Sess. Laws 372; *see also I.P. ex rel. Cardenas v. Henneberry*, 795 F.Supp.2d 1189, 1194 (D.Colo. 2011) (discussing this portion of the statute in relation to *Ahlborn*).

¶ 6 In *Ahlborn*, the Court held that a state's Medicaid lien is limited to the portion of the recipient's third-party settlement "designated as payments for medical care." 547 U.S. at 284–85, 126 S.Ct. 1752. The parties in *Ahlborn* had stipulated to the portion of the settlement constituting compensation for medical care, *id.* at 275, 126 S.Ct. 1752, but "[t]he Court nonetheless anticipated the concern that some settlements would not include an itemized allocation." *See Wos v. E.M.A. ex rel. Johnson*, 568 U.S. ——, ——, 133

S.Ct. 1391, 1397, 185 L.Ed.2d 471 (2013) (discussing *Ahlborn*). The *Ahlborn* Court thus acknowledged the risk that parties to a tort suit might try to "allocate away the State's interest." 547 U.S. at 288, 126 S.Ct. 1752.[1] However, the Court noted that such problems could "be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." *Id.*

¶ 7 *Ahlborn*, then, did not prescribe any particular method for "how to determine what portion of a settlement represents payment for medical care." *Wos*, 568 U.S. at ——, 133 S.Ct. at 1397; *accord Henneberry*, 795 F.Supp.2d at 1196; *In re E.B.*, 729 S.E.2d 270, 296 (W.Va.2012). In *Wos*, the Supreme Court suggested that settlement allocations could be accomplished by stipulations between parties (as in *Ahlborn*) or potentially by using established ex ante administrative criteria. 568 U.S. at ——, 133 S.Ct. at 1399–1400. However, both *Wos* and *Ahlborn* also recognized that, in some circumstances, parties might need to seek a judicial determination of how to fairly apportion a settlement. *Id.* at ——, 133 S.Ct. at 1399, 1401; *Ahlborn*, 547 U.S. at 288, 126 S.Ct. 1752; *accord Yang v. Portage Cnty., Wis.*, No. 12–cv–797–bbc, 2013 WL 3778142, at *4 (W.D.Wis. July 19, 2013) ("Because Wisconsin does not provide a mechanism for resolving the dispute administratively, the responsibility falls on this court to hold a hearing.").

¶ 8 As for judicial determinations, the *Wos* Court observed that "[t]he task of dividing a tort settlement is a familiar one." 568 U.S. at ——, 133 S.Ct. at 1401. "In a variety of settings, state and federal courts are called upon to separate lump-sum settlements or jury awards into categories to satisfy different claims to a portion of the moneys recovered." *Id.* As an example of how courts have managed to accomplish such allocations, *Wos* cites *Colorado Compensation Insurance Authority v. Jones*, 131 P.3d 1074, 1077–78

(Colo. App. 2005). In *Jones*, a division of this court noted, in the context of apportioning workers' compensation settlements, that courts "must determine the amount of each category of damages actually suffered by the employee, and based on these findings, allocate the settlement among the categories." *Id.* at 1077; *see also Colo. Comp. Ins. Auth. v. Jorgensen*, 992 P.2d 1156, 1166 (Colo. 2000) (courts apportioning settlements should look to the totality of the circumstances). In the end, "[w]hatever method of allocation is used, what matters is that past medical expenses are distinguished from other damages on the basis of a rational approach." *E.B.*, 729 S.E.2d at 297; *accord Smalley v. Neb. Dep't of Health & Human Servs.*, 811 N.W.2d 246, 257 (Neb.2012) ("[S]tates are generally free to employ any reasonable means to determine what portion of a settlement relates to medical expenses and is therefore recoverable by a state Medicaid administrator."); *but cf. Wos*, 568 U.S. at ——, 133 S.Ct. at 1402 (holding that states may not "adopt an arbitrary, one-size-fits-all allocation for all cases").

¶ 9 The *Wos* Court certainly recognized that, absent stipulation, a fair settlement allocation "may be difficult to determine." 568 U.S. at ——, 133 S.Ct. at 1400. Furthermore, *Wos* acknowledged that fact-specific considerations might be relevant to judicial determinations in particular cases. *See id.* (noting that apportioning settlement funds will depend upon both how likely a plaintiff is to prevail on his or her claims at trial and how much he or she "reasonably could have expected to receive on each claim if successful, in view of damages awarded in comparable tort cases"); *see also Price v. Wolford*, 608 F.3d 698, 707–08 (10th Cir.2010) (discussing considerations that might justify reduced Medicaid repayment amounts). Nevertheless, the Court expressed confidence that judges and lawyers would be able to "find objective benchmarks to make projections of the damages the plaintiff likely could have

---

1. At the same time, the Court also noted the "countervailing concern" that a rule giving absolute priority to payment of the full amount of a Medicaid lien "might preclude settlement in a large number of cases, and be unfair to the recipient in others." *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 288, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006); *see also Burtsell v. Toumpas*, No. 1:08–cv–455–JL, 2012 WL 1656303, at *14–15 (D.N.H. May 10, 2012) ("The very nature of a negotiated settlement of a lawsuit is that nobody gets everything he or she would have gotten if the case had proceeded to trial and resolved in his or her favor.").

proved had the case gone to trial." *Wos*, 568 U.S. at ——, 133 S.Ct. at 1400.

¶ 10 At bottom, "*Ahlborn* and *Wos* call for some process by which Medicaid lien disputes may be resolved if the state and the beneficiary cannot agree on the amount of a settlement or other recovery that is attributable to medical expenses." *Reyes v. Hickenlooper*, 84 F.Supp.3d 1204, 1212 (D.Colo. 2015). But, as of yet, Colorado has adopted no particular method applicable to all cases in which parties seek apportionment of a third-party settlement for purposes of determining the amount of a Medicaid reimbursement lien. Unless or until some other procedure is developed, "Colorado's courts are open and capable of resolving these sorts of disputes." *Id.* at 1213. Considering the Supreme Court decisions, we conclude that the touchstone of any method used to calculate apportionment of medical expenses must be that it is not arbitrary or one-size-fits-all, and that it employs reasonable means. *See Wos*, 568 U.S. at ——, 133 S.Ct. at 1402.

### B. Relevant Procedural History

¶ 11 S.P. was twenty-two years old when she was severely injured in a snowboarding accident at a Colorado ski resort. As a result of her injuries, S.P. is a paraplegic and will require ongoing medical care and assistance for the rest of her life.

¶ 12 After the accident, S.P. applied for Medicaid and was approved. As a condition of receiving benefits, S.P. assigned to the Department the right to receive any payments from a third party for her medical care. *See* 42 U.S.C. § 1396k(a)(1)(A) (states must require Medicaid recipients to assign such rights); § 25.5–4–301(4) (Colorado's assignment statute). Over time, Medicaid paid providers a total of $142,779 for medical care on behalf of S.P., including retroactively to the date of the accident.

¶ 13 S.P. filed a tort suit against the operator of the ski area where she was injured. She claimed damages not only for past medi-

cal expenses, but also for future medical expenses, home services,[2] past and future lost earnings, and non-economic losses. The Department did not intervene in the tort suit or ask to participate in settlement negotiations. *Cf.* § 25.5–4–301(4) (the attorney general, on behalf of the Department, may intervene in a legal proceeding against a third party to enforce its Medicaid lien rights).

¶ 14 Leading up to trial in the tort case, S.P. submitted a proposed trial management order identifying the total amount of her damages as $5,804,513, of which $776,383 comprised past medical expenses. The amount identified as past medical expenses represented what S.P.'s medical providers had billed to Medicaid. As noted above, the amount Medicaid actually paid ($142,779) was substantially less than the amount billed. Just weeks before the scheduled trial, the tort case settled for one million dollars.[3] The settlement was for a lump sum that was not specifically allocated between compensation for medical versus non-medical damages.

¶ 15 More than half of the gross amount of the settlement went to pay S.P.'s attorney fees and costs. S.P.'s attorneys used some additional settlement funds to pay other creditors. The remainder of the settlement was deposited into a special needs trust for the benefit of S.P. S.P. was subsequently terminated from the Colorado Medicaid program, and she moved to Florida.

¶ 16 The Department was entitled to a statutory lien for repayment of the Medicaid expenses it had paid. *See* § 25.5–4–301(5)(a). But after the settlement, S.P. and the Department could not agree on how much S.P. should have to repay Medicaid out of her settlement funds. In the lawsuit to enforce the lien, the Department took the position that S.P. should be required to repay the full amount that Medicaid paid to her care providers: $142,779. S.P. disagreed and argued that the repayment amount could not be determined until the settlement funds were apportioned pursuant to *Ahlborn* and *Wos*.

---

2. S.P.'s "home services" damage claim embodies her need for assistance with personal care (like bathing and dressing) and household responsibilities (such as cleaning, maintenance, and yard work).

3. S.P. asserts the settlement amount was accepted because her damages, had she gone to trial, would have been limited by the million-dollar statutory cap on recovery of tort damages against a ski area operator. *See* § 33–44–113, C.R.S. 2014.

¶ 17 The trial court set the matter for a hearing. The notice stated that the purpose of the hearing was to allocate the settlement and determine the repayment amount. In advance of the hearing, S.P. moved for summary judgment. On the same day that S.P. filed her summary judgment motion, the Department filed a trial brief. Each party also filed briefs in response to the other's pleadings. In these briefs, both parties agreed that, to determine the repayment amount, the trial court should apportion the settlement funds using a "proportional allocation" method. And, although they did not agree on the dollar amounts to be used in the formula, the parties did agree that, to employ the proportional allocation method, the court should divide the amount of S.P.'s medical expenses by the total projected value of her tort case. The parties stipulated that the projected value of S.P.'s tort case was $4.9 million.

¶ 18 Before the hearing, the Department moved to convert its trial brief to a motion for summary judgment because, it claimed, there were "no genuine issues as to any material facts." The trial court did not rule on that motion before the hearing. And, at the hearing, the Department reiterated that no fact finding would be necessary for the trial court to decide the case. After the hearing, the court allowed the parties to enter exhibits into the record. The court then held a follow-up hearing, at the end of which the court issued its ruling from the bench. That ruling was subsequently reduced to a written order and final judgment.

¶ 19 In its order, the trial court agreed that a proportional allocation of the settlement amount was appropriate and accepted the parties' stipulation that the total value of S.P.'s tort case was $4.9 million. Applying the formula, the court divided the amount that Medicaid paid to providers for S.P.'s past medical expenses by the stipulated total value of her tort case to arrive at a percentage:

$$\frac{\text{amount paid for past medical expenses}}{\text{stipulated total value of tort case}} \quad \frac{\$142{,}779}{\$4{,}900{,}000} \quad \text{x} \quad 100\% \quad = \quad 2.9\% \text{ (rounded down)}$$

Next, the court applied the percentage that its formula yielded to the gross amount of S.P.'s settlement. That computation was simply:

$$\underset{\substack{\text{medical portion of} \\ \text{settlement}}}{2.9\%} \quad \text{x} \quad \underset{\substack{\text{gross settlement} \\ \text{amount}}}{\$1{,}000{,}000} \quad = \quad \underset{\substack{\text{gross repayment} \\ \text{amount}}}{\$29{,}000}$$

Finally, the court reduced the repayment amount by 12.5% as the Department's contribution to S.P.'s legal fees in the tort case. See § 25.5–4–301(5)(d) (authorizing a reduction of up to 25% of the lien for attorney fees contribution). Thus, the final calculations were:

$$\underset{\substack{\text{gross repayment} \\ \text{amount}}}{\$29{,}000} \quad \text{x} \quad \underset{\substack{\text{attorney fees} \\ \text{percentage}}}{12.5\%} \quad = \quad \underset{\substack{\text{attorney fees} \\ \text{amount}}}{\$3625}$$

and then:

$$\underset{\substack{\text{gross repayment} \\ \text{amount}}}{\$29{,}000} \quad - \quad \underset{\substack{\text{attorney fees} \\ \text{amount}}}{\$3625} \quad = \quad \underset{\substack{\text{net repayment} \\ \text{amount}}}{\$25{,}375}$$

Accordingly, the court ordered S.P. to pay the Department $25,375 to satisfy the lien.

### C. Analysis

¶ 20 Both parties now appeal the trial court's apportionment of S.P.'s settlement funds and its determination of the amount of the Medicaid lien. The Department contends that the court should have determined the amount of the settlement apportioned to medical expenses by considering the total amount providers had *billed* for S.P.'s past medical damages instead of only the amount that Medicaid *paid* for those bills. In her cross-appeal, S.P. maintains that the trial court should have applied its apportionment calculation to the *net* amount of the settlement (after attorney fees and costs) instead of the *gross* amount. We disagree with both contentions.

### 1. Standard of Review

¶ 21 When reviewing a trial court's order, we defer to the court's findings of fact if they are supported by the record, but review de novo its conclusions of law. *Jones v. Samora*, 2014 CO 4, ¶ 14, 318 P.3d 462.

### 2. Past Medical Expenses

■ ¶ 22 Since *Ahlborn* and *Wos*, Colorado has not enacted any procedures (statutory, administrative, or otherwise) for apportioning third-party settlements for Medicaid lien purposes. Absent such a directive, the parties agreed that the trial court should apply a proportional allocation formula to determine what amount out of S.P.'s settlement funds should be considered compensation for past medical expenses.[4]

¶ 23 Although the parties agreed that the court should calculate the repayment amount by dividing the total amount of S.P.'s past medical expenses (the numerator) by the total value of her tort claims against the ski resort (the denominator), and that the total value of S.P.'s tort claim was $4.9 million, they could not agree on what figure the court should use for the numerator. S.P. posited that the court should use the $142,779 that Medicaid actually paid to her care providers for medical expenses. The Department, on the other hand, asserted that the court should use $776,383—the amount of past medical expenses that S.P. had identified in her proposed trial management order (TMO) in her tort case as the total amount that S.P.'s medical providers had billed.

¶ 24 In advance of the allocation hearing, the parties stipulated to the admissibility of S.P.'s proposed TMO from the tort case. The Department asked the trial court to hold S.P. to the representations she made about her damages in the TMO. *See Mullins v. Med. Lien Mgmt., Inc.*, 2013 COA 134, ¶¶ 53–54, —— P.3d —— (A "pretrial management order" filed in a personal injury case underlying a lien dispute is an admissible, non-hearsay admission by a party opponent under CRE 801(d)(2)(A)-(B) because it was "prepared or executed by" the plaintiff or his attorney.). Nevertheless, the trial court found the damages estimates in S.P.'s TMO to be wholly unreliable as evidence. Indeed, the court stated:

> I do not feel it appropriate to utilize [S.P.'s] pretrial itemization of damages in a ... trial management order as a—I'm not comfortable that that is a real number. It may be what they are going to claim, but I don't know whether that's based on reality or not, and I'm willing to bet that the defendants in [the tort] case strongly disagreed with what those numbers were.

The court also noted that the only number that "makes any sense" as the numerator was the amount that Medicaid actually paid. And as the finder of fact, the trial court was entitled to discredit evidence that it found unpersuasive. *See, e.g., Reid v. Pyle*, 51 P.3d 1064, 1068 (Colo.App.2002).

---

4. In the trial court proceedings, the Department took the position that the court should look to the amount of the settlement apportioned to both past and future medical expenses. However, the Department has expressly abandoned that argument on appeal.

¶ 25 Additionally, the trial court's decision to use the amount paid is consistent with S.P.'s argument that her TMO damages estimate represented what she could recover on her "best day in court." The court remarked that it had no confidence in S.P.'s TMO damages estimate because it represented a "best case scenario," and "we all know that just because [an expert] says it's so doesn't mean that a jury says it's so." Accordingly, we are satisfied that the trial court relied on an objective indication of S.P.'s total past medical expenses that is supported by the record. *See Wos,* 568 U.S. at ——, 133 S.Ct. at 1400 (directing trial judges and trial lawyers to look to "objective benchmarks" when making damages projections). Therefore, the court's decision to rely on the amount paid rather than the amount billed is not clearly erroneous.

¶ 26 Moreover, *Ahlborn* and *Wos* do not address the issue of "[w]hether a Medicaid lien may be enforced against the portion of a tort settlement that represents medical expenses that are billed but not paid because medical providers have accepted discounted payments in full satisfaction of their bills." *See Sw. Fiduciary, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.,* 249 P.3d 1104, 1107 (Ariz.Ct.App.2011). Our statute provides for a lien for medical assistance. *See* § 25.5–4–301(5)(a) ("When the state department has furnished medical assistance to or on behalf of a recipient ... for which a third party is liable, the state department shall have an automatic statutory lien for all such medical assistance."); *see also* § 25.5–4–103(13), C.R.S.2014 (defining "[m]edical assistance" as "payment on behalf of recipients ... to enrolled providers under the state medical assistance program of medical care, services, goods, and devices rendered or provided to recipients"). Thus, *Ahlborn* and *Wos* do not require trial courts to limit their consideration to either the amount billed or the amount paid. *See E.M.A. ex rel. Plyler v. Cansler,* 674 F.3d 290, 307 (4th Cir.2012) ("*Ahlborn* is properly understood to prohibit recovery by the state of more than the amount of settlement proceeds representing *payment for medical care* already received.") (emphasis added), *aff'd sub nom. Wos,* 568 U.S. ——, 133 S.Ct. 1391; *Sw. Fiduciary,* 249 P.3d at 1109 (concluding that "federal law does not allow a state Medicaid plan to enforce its lien against any portion of a tort settlement not attributable to the plan's actual payments"); *Davis v. Roberts,* 130 So.3d 264, 267 (Fla.Dist.Ct.App.2013) (Where Medicaid had paid all of the recipient's medical expenses, the amount Medicaid paid constituted his "entire claim for past medical expenses."); *cf. E.B.,* 729 S.E.2d at 301–04 (affirming reliance on amounts billed to Medicaid to establish amount of future medical expenses in the absence of credible evidence of how much Medicaid would have actually paid).

¶ 27 Accordingly, we conclude that the trial court's method in this case was not unreasonable, nor was it arbitrary. We note, however, that the method used by the trial court may not be applicable to every case involving payment of Medicaid liens from settlements with third parties. As *Ahlborn* and *Wos* noted, each case may have to be resolved on its own particular facts.

■ ¶ 28 The Department argues that the trial court's allocation does not comply with *Wos* because the court did not apply the collateral source doctrine. *See* § 10–1–135(10)(a), C.R.S.2014 ("The fact or amount of any collateral source payment or benefits shall not be admitted as evidence *in any action against an alleged third-party tortfeasor....*") (emphasis added). We reject this contention for two reasons. First, the Department never specifically asked the trial court to apply the collateral source doctrine to the settlement allocation. Although the Department did ask the court to consider the amount billed rather than the amount paid, it never cited to the collateral source statute or any of the cases it now claims the trial court should have applied. Hence, the Department has not preserved for appeal the issue of whether the collateral source statute, which is expressly required in third-party tort cases, also applies to settlement apportionments for Medicaid lien purposes. *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.,* 2012 CO 61, ¶ 18, 287 P.3d 842 ("A basic principle of appellate jurisprudence is that arguments not advanced in the trial court and on appeal are generally deemed waived."); *Liberty Bankers Life Ins.*

*Co. v. First Citizens Bank & Trust Co.*, 2014 COA 151, ¶ 25, —— P.3d —— ("We do not address issues that have not been sufficiently preserved in the trial court."). Moreover, nothing in *Wos* mandates the application of a state's collateral source rule.

¶ 29 The Department also complains that the trial court's methodology is in conflict with the Medicaid exceptions written into Colorado's "make whole" statute. *See* § 10–1–135(2)(c)(II), (10)(b). But again, the Department did not call the trial court's attention to this principle or in any way mention the make whole statute in the trial court proceedings. S.P. never argued that the amount of the Department's lien should be affected by the fact that she was not made whole, and the trial court never implied that it applied that doctrine to arrive at its conclusion. Accordingly, we decline to consider this issue raised for the first time on appeal.

¶ 30 Finally, the Department urges that judicial estoppel does not allow S.P. to "present one set of damages in a tort case and then do an about-face and present different damages in a Medicaid lien proceeding." But again, because the Department never mentioned judicial estoppel to the trial court, we decline to consider its applicability for the first time on appeal.

### 3. Application of Formula to Gross Settlement Amount

¶ 31 At the trial court hearing, the parties also disagreed on whether the court should apply its formula to the gross or net amount of S.P.'s settlement funds. The Department took the position that the court should apply its 2.9% medical expense apportionment to the gross settlement amount of one million dollars. S.P., however, contended that the court should apply that apportionment percentage to the net settlement amount of $442,213 that S.P. obtained after paying her attorney fees and costs. As noted, the court agreed with the Department and applied its apportionment percentage to the gross amount.

¶ 32 In her cross-appeal, S.P. maintains that the trial court should have applied its formula to the net, rather than gross, settlement amount. S.P. claims she never "owned" any portion of the settlement that she was obligated to pay in attorney fees and costs, and could not have assigned to the Department something that she did not own. *See Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244, 1248 (Colo.1994) ("As a general principle of common law, an assignee stands in the shoes of the assignor.").

¶ 33 S.P. has supplied (and we have found) no authority to support the contention that she never owned the portion of the settlement that she paid to her attorneys for fees and costs. The implication of this argument is that if S.P. did not "own" these funds, her attorneys did. To the contrary, S.P.'s attorneys, at best, merely possessed the right (upon satisfaction of certain conditions) to a lien against her settlement funds. *See* §§ 12–5–119, –120, C.R.S.2014. "An attorney's lien, like other liens, merely places others on notice that someone claims an interest in the funds subject to the lien and must be reduced to judgment before, title to the liened property is transferred." *People v. Gray*, 35 P.3d 611, 620 (Colo.O.P.D.J.2001). Thus, settlement funds "remain[ ] the property of" the client until attorneys have complied with the attorney lien statute and acted to have the lien reduced to judgment. *Id.* We therefore reject the idea that S.P. never owned the portion of the settlement funds that she used to pay attorney fees and costs. As a result, we also necessarily reject S.P.'s claim that the scope of the rights she assigned to the Department precluded the trial court from including that portion of the funds when applying its apportionment formula.

¶ 34 Moreover, Colorado's statutory scheme contains no requirement that courts deduct attorney fees and costs from the settlement amount before assessing the proportional amount of a Medicaid lien. *See* § 25.5–4–301(5)(c) (providing that "the entire amount of" any settlement shall be subject to the Department's lien); *see also State v. Peters*, 946 A.2d 1231, 1241 n. 21 (Conn.2008) (collecting statutes and cases prescribing various approaches to accounting for attorney fees when determining the amount of a Medicaid lien). Instead, Colorado's statute accounts for attorney fees by allowing a reduction of up to 25% of the amount of the lien:

Where the action or claim is brought by the recipient alone and the recipient incurs

a personal liability to pay attorney fees, the state department will pay its reasonable share of attorney fees not to exceed twenty-five percent of the state department's lien. The state department shall not be liable for costs.

§ 25.5–4–301(5)(d). The trial court applied this statute by reducing the calculated repayment amount by 12.5% as the Department's contribution to S.P.'s fees pursuant to section 25.5–4–301(5)(d).[5] Yet S.P. does not squarely challenge the validity of the statute. And because the statute provides the means by which the Department may be required to contribute its reasonable share of attorney fees, we perceive no error in the trial court's application of the statute instead of accounting for attorney fees in the alternative manner S.P. proposed.

¶ 35 For these reasons, we conclude that the trial court did not err in applying its formula to the gross settlement amount.

## II. Conclusion

¶ 36 The judgment is affirmed and the case is remanded to the trial court to release the funds held in its registry consistent with this opinion.

JUDGE RICHMAN and JUDGE STERNBERG * concur.

---

5. S.P. asked the trial court for the 25% maximum contribution permitted by the statute. *See* § 25.5–4–301(5)(d), C.R.S.2014. The department asked the court to impose a contribution of "something less than 10 percent."